Parker, C. J.
This case comes before us on an appeal from a decree of the judge of probate for the county of Bristol, whereby the respondent Hathaway was appointed guardian of the person and estate of the appellant, found to be a person non compos mentis. The proceedings of the judge of probate are founded upon the return of an inquisition, made by the selectmen of the town of Berkley, of which Chase is an inhabitant; and the inquisition was taken pursuant to a commission from the judge of probate, which issued upon the application of certain inhabitants of said town, according to the provisions of the statute of 1783, c. 38, § 5.
It does not appear, by the copies of the probate proceedings produced by the appellant, that he was present before the judge of *194 probate, or before the selectmen when their inquisition was taken, or that he had any notice from the selectmen of the time and place appointed by them to make their inquiry, or from the probate office of the return of the commission, or of the time assigned by the judge for considering and acting upon it. Upon the supposition that some material papers had not been produced, we should have postponed the hearing upon this appeal until full copies were produced ; but it being admitted that the copies actually produced show the whole of the transactions in the probate * office, we must decide upon the sufficiency of these transactions to support the decree of the judge, which is appealed from.
The want of notice to the supposed non compos is the subject of two of the reasons assigned for the appeal; and another contains a denial of the fact that the appellant is of unsound mind. On this latter we should hear testimony, and decide upon the liability of the appellant to the process under the statute, if the proceedings in the Probate Court had been correct in substance and in form. But being of opinion that the second and third reasons of appeal are sustained in point of law, we make no inquiries respecting the state of mind of the appellant; because, upon anolher inquisition, which may be taken and returned, and adjudicated upon by the Probate Court 'more correctly, the fact can be better ascertained than before us, under the present circumstances.
There being no provision in the statute for notice to the party who is alleged to be incompetent, by reason of insanity, to manage his estate, it seems that the judge of probate did not think such notice essential to his proceedings. But we are of opinion that, notwithstanding the silence of the statute, no decree of a Probate Court, so materially affecting the rights of property and the person, can be valid, unless the party to be affected has had an opportunity to be heard, in defence of his rights.
It is a fundamental principle of justice, essential to every free government, that every citizen shall be maintained in the enjoyment of his liberty and property, unless he has forfeited them by the standing laws of the community, and has had opportunity to answer such charges as, according to those laws, will justify a for feiture or suspension of them. And whenever the legislature has provided that, on account of crime or misfortune, the public safety or convenience demands a suspension of these essential rights of the individual, and has provided a judicial process, by which the fact shall be ascertained, it is to be understood as required * that the tribunal, to which is committed the duty of inquiring and determining, shall give opportu *195 nity to the subject to be heard in support of his innocence or his capacity.
It lias been intimated that notice to an insane person would be of no avail, because he would be incapable of deriving advantage from it. But the question upon which the whole process turns is, whether he is insane; for the presumption of law is, that every man is of sound mind until the contrary is proved; and it being possible that interested relatives might falsely suggest insanity, with a view to deprive the party of the power of disposing of his estate, that very possibility should be guarded against by personal notice to him, when practicable, that he may expose himself to the view of the judge, and prove, by his own conduct and actions, the falsity of the charge.
We should think it advisable, at least, that whenever commissions shall issue from the Probate Court to selectmen, to take an inquisition, they should contain an order that notice, be given to the party complained of, that he may appear before the selectmen. This would be conformable to the practice of the Court of Chancery in England. It is held there to be the privilege of the party who is the object of a commission of lunacy to be present at the execution ; (1) and in a case before the lord chancellor, he inclined to quash the inquisition, the commission not having been executed near the place of abode of the lunatic, and the order that he should have notice having been disobeyed. (2) A hearing before the selectmen, however, may not be essential, although expedient, as the inquisition, is not conclusive, and diere is another opportunity to traverse it.
But whether notice by the commissioners is essential or not, we are clear that it ought to be given before the adjudication in the Probate Court, and that without it such adjudication is null and void. A notification, served and returned in the manner practised with civil processes, would be sufficient; the time ought to be prescribed by the judge of probate.
*In chancery, it has been held that a traverse to the return of an inquisition is a right by law, although the lord chancellor is not dissatisfied with the return upon the evidence ; an order was therefore suspended, for the purpose of taking the traverse. (3) This is done, in England, by carrying the case' into a court of common law, and taking the verdict of a jury. With us the judge of probate would try the question.
Indeed, it would seem strange that the whole estate of a citizen might be taken from him, and committed to others, and his personal *196 liberty be restrained, upon an ex parte proceeding, without any notice of the pendency of a complaint, upon a suggestion of lunacy or other defect of understanding; while the depriving him of the minutest portion of that property, or the slightest detention of his person, would be illegal upon a charge of crime, or of a breach of a civil contract, unless all the formalities of a trial were secured to him by the forms of process, and the regular execution of it.
We have been surprised, of late, to find an irregularity in the probate offices, in several of the counties, which we think it important should be corrected in their future proceedings. It consists in the omission to enter of record orders and decrees, which often have an essential and final effect upon property to a very considerable amount. In the case now before us, it appears that no formal decree was ever passed, declaring the appellant non compos; or, if passed, that the only evidence of it rests in the recital which precedes the letter of guardianship. In a late case in Cumberland, the only evidence of a decree,' allowing and approving a last will and testament, was of the same nature. This seems to us as irregular as it would be for a common law court to issue execution, without any evidence of a judgment except what might be contained in the execution.
A Court of Probate, although not technically a court of record, ought to have a perfect record of all its orders and decrees ; and it was for this purpose, principally, * that the constitution established the office of register. Orders of notice, among other things, should be recorded; or, if not, should be filed, with the return upon them; and in all important decrees, if previous notice has been given, that fact should be recited in the decree.
We have been thus particular, with a view to produce uniformity of practice in a court whose duties and jurisdiction affect, at one time or another, every estate in the community. And it is the more important that this should be attended to in the probate offices, as any material defect will render the proceedings null at any period when they shall be brought in question; it having been determined that orders and decrees of those courts may be avoided by plea, they not being, like judgments at common law, reversible by writ of error.

Decree reversed

 12 Ves. Jun. 455. — 3 Atk. 6, 7.

 7 Ves. Jun. 261.

 5 Ves. Jun. 450-