### H—— appellee *versus* S——appellant.

A judge of probate has no authority to appoint a guardian of any person as an idiot, *non compos,* lunatic, or distracted person until such person has been so returned upon an inquisition of the selectmen of the town where he dwells.

And it is not sufficient to warrant a decree of the judge appointing a guardian that the selectmen have returned that the memory of the person to whom the inquisition related is greatly impaired. But the fact of his being an idiot, &c. must be distinctly and expressly returned.

THIS was an appeal from a decree of the judge of probate in this county, declaring the appellant to be a person *non compos mentis,* and appointing a guardian of his person and estate.

It appeared that on the 30th September, 1826, a petition was presented to the judge of probate, alleging that by reason of mental infirmities the appellant had become *non compos mentis,* and praying that a guardian might be appointed. The judge of probate made an order, that the petition " be considered at a special probate court to be holden at Portsmouth, on Monday, the 16th October, 1826, &c. and that the selectmen of said Portsmouth make inquisition concerning the situation of said S. and make report of their opinion at said court," and that notice should be given to the said S. by giving him an attested copy of the petition and the order fourteen days before said court.

Notice was given to S. on the 2d October, 1826, in pursuance of the order.

The selectmen of Portsmouth reported, " that as well from their own occasional observation as from information derived from other sources, they are of opinion that the memory of the said S. by reason of age or other causes is greatly impaired, and appears at times to be nearly lost ; but they do not know, nor have they reason to be-

lieve that said S. labours under any other mental infirmity."

On the 16th October, 1826, the parties appeared and the hearing was by agreement adjourned to the 24th October, 1826.

The parties appeared on the 24th October, 1826, and it was agreed by counsel "that the further hearing on said petition be postponed to be called up by either party."

On the 30th October, 1826, another petition was presented to the judge of probate "requesting that a further hearing might be had on the original petition at as early a period as possible. The judge of probate appointed the 14th November, 1826, as the day of hearing and notified the petitioner and the counsel of S. of the time and place appointed.

On the 14th November, 1826, the parties appeared and the cause was continued to the 9th January, 1827, when the parties again appeared, the cause was heard, and it was decreed by the judge of probate that the said S. was *non compos mentis* and a guardian was appointed.

From this decree S. appealed to this court.

*E. Cutts* and *Mason* now appeared as counsel for the appellant, and urged that the decree of the court below ought to be reversed on account of the irregularity in the proceedings there, to which they took several exceptions.

In the first place, they objected that some part of the proceedings was had at special probate courts, which the judge of probate was not by law authorized to hold.

The constitution of this state which was adopted in the year 1783, contained this clause. "The judges of probate, &c. shall hold their courts at such place or places on such fixed days as the convenience of the people may require. And the legislature shall from time to time hereafter appoint such times and places until which appointments the said courts shall be holden at the times and places which the respective judges shall direct."

The present constitution contains this clause. "All matters relating to the probate of wills, &c. shall be exercised by the judges of probate in such manner as the legislature have directed or may hereafter direct; and the judges of probate shall hold their courts at such place or places on such fixed days as the conveniency of the people may require and the legislature from time to time appoint."

The statute of June 29, 1819, declares that the probate court within the county of Rockingham shall thereafter be holden at particular times and places which are specified in the statute "and at all such other times and places as the judge for the aforesaid county may appoint."

The legislature having declared on what days and at what places probate courts shall be held, they can be held at no other time or place consistently with the constitution; the clause in the statute authorizing the judge to appoint other times and places is therefore void.

In the next place, they objected that all the proceedings of the probate court and of the selectmen, which related to an inquisition by the latter, were irregular and void. There was no commission from the judge of probate to the selectmen requiring them to make inquisition. And if the decree of the judge of probate could be held to be a legal substitute for a commission, it does not go far enough. The selectmen should be required to make inquisition of the fact, whether *compos*, or *non compos*, *mentis*. In this case they were required to make inquisition of the situation of the appellant and report, not facts, but their opinion. They were not therefore either authorized or required to make a legal inquisition, and they in fact made none. They did not examine the appellant. They received no evidence. Casual observation and common report seem to have been the foundation of the opinion they expressed, that the memory of the appellant was impaired. As to the fact whether he was or was not *compos mentis* they do not express even an opinion. There has been then, in fact, no inquisition. Fitz H. N. B. 232;

2 Maddocks, 575 ; 3 Atkyns, 6 & 7 & 167 ; 12 Vesey Jr. 455 ; 1 Harrison's Ch. 501 ; 2 Vesey, 409 ; 8 Mass. Rep. 129.

H——
v.
S——

The judge of probate has no authority to appoint a guardian until the selectmen have returned a legal inquisition. The statute of March 21, 1776, enacted that it should be in the power of the judge of probate, upon request made by any of the friends, of any idiot, *non compos*, lunatic, or distracted person, to direct the selectmen of the town to make inquisition thereinto, "and if the person said to be an idiot, or distracted, shall be so determined by the judge of probate in such county, and selectmen of the town or a major part of them, wherein such idiot or distracted person lives, then and in that case the said judge of probate shall assign and appoint some suitable person or persons to be guardian or guardians."

The statute of February 9, 1791, enacted that it should be in the power of the judge of probate, upon request made by the friends of any idiot, *non compos*, lunatic, or distracted person to direct the selectmen to make inquisition thereinto ; "and if the person said to be an idiot, or distracted shall be so determined by the judge of probate in such county wherein such idiot or distracted person lives, the said judge of probate shall appoint some suitable person," &c.

The statute of July 2, 1822, enacts that upon a request made in writing by any relative of any idiot, *non compos*, lunatic, or distracted person, the judge of probate shall cause the selectmen to make inquisition thereinto ; and if upon the return of such inquisition and due examination had, it shall appear to the said judge and be decreed by him that such person is an idiot, &c. he is authorized to appoint a guardian.

Thus it appears that there has been some changes in the language of the statutes on this subject ; but it is believed that an inquisition duly returned has always been considered as essential, and no guardian has ever been

H——
*v.*
S——.

appointed in any probate court where the forms of law have been at all regarded without an inquisition.

There is another defect in this inquisition. The selectmen have not made their return upon oath.

It was further insisted in behalf of the appellant that by the agreement made on the 24th October to postpone the hearing indefinitely, there was a discontinuance of the proceedings before the judge of probate, and nothing farther could be legally done. But if this should be found not to be tenable ground, it was clear that nothing could be done until due notice was given to the appellant : and that notice given verbally to his counsel by the judge of probate could not be deemed legal notice to him.

*C. W. Cutter* and *Cushman* for the appellee in answer to the objection that some of the proceedings had been had at a special probate court, relied much on the invariable usage to hold such courts in this county, for a great many years. They admitted that usage could not prevail against the spirit and clear intention of the constitution. But it might show the meaning of the constitution. Long continued usage is often a strong practical exposition of the meaning of an instrument. *Optimus interpres rerum usus.* The constitution provides that probate courts shall be holden on such fixed days as the conveniency of the people may require and the legislature from time to time appoint. The practical exposition of this clause has been that the courts were to be holden at such times as the legislature appointed and at such other times as the conveniency of the people may require. And special courts of probate have been so frequently holden and so much business has been done at such courts, that great inconvenience and mischief must follow a decision that they are illegal.

With respect to the inquisition they admitted that the proceedings were in some respects informal, but urged that they were sufficient in substance. It was true that the fact whether *compos,* or *non compos, mentis,* was not in

terms found by the selectmen. But it was found that there was almost an entire loss of memory, which was tantamount ; and the court will look to the substance and not to the form. It was unnecessary that the selectmen should return an inquisition under oath. They are public officers, sworn to discharge the duties of their office faithfully. They take the inquisition as public officers, and need not be again sworn.

As an answer to the objection that the proceedings before the judge of probate had been discontinued on the 24th October, they relied upon the subsequent appearance of S. and his counsel before the judge of probate and upon an agreement made by counsel to wave all irregularity in the proceedings on that account.

RICHARDSON, C. J. (*After giving a history of the proceedings in the probate court.*) Several objections have been raised in the argument of this case to the regularity of the proceedings in the court below, and we much regret the want of further time to form a more deliberate opinion upon the exceptions which have been taken than can be formed at this time. But the case seems to require a speedy decision. The interest of the individual, who has been appointed guardian, requires this. A court of probate is not technically a court of record, and to be valid its proceedings must be warranted by law. Any order or decree of the court which is repugnant to law is null, and may be avoided by plea. If then the decree in this case appointing a guardian be void, it must be very desirable to the guardian to know it immediately.

The interest of the appellant and his family demands a speedy decision. The selectmen have found that his memory is greatly impaired ; and the judge of probate, after a full hearing, has adjudged him to be *non compos mentis*. Nor is this all. We have seen in the newspapers a protest against the doings of the judge of probate in this case, which, if published by this appellant, would seem to us to indicate a decay of his understanding. We

have been long acquainted with him and have known how high a sense of decorum he has always heretofore cherished; and it is believed that had he retained the memory which he formerly had, he would have deemed an appeal a sufficient protest against the doings of the judge of probate, and would have seen the gross impropriety of appealing to the public through the newspapers on a question pending in a court of justice. If, as these circumstances seem to indicate, the appellant stands in need of a guardian, it is highly important to him and his family that a guardian should be legally appointed, and that the decision of the questions now under consideration should not be delayed.

We are of opinion that the proceedings in the court below, are irregular, and that the decree appointing a guardian must be reversed for want of an inquisition by the selectmen of Portsmouth.

The order of the judge of probate, in this case, was no proper commission to the selectmen to take an inquisition. There should have been a commission under the seal of the probate court directing the selectmen, in the language of the old writ, *de idiota inquirendo et examinando*, to "go to him the said S. in their own persons and circumspectly examine him by such ways and means touching his condition as they might be best informed," and diligently enquire whether the said S. was *non compos mentis* or not, and return to the probate court the inquisition thereof distinctly and openly made under their hands and seals. Regularly there should have been such a commission. But we should not be inclined to reverse the decree for any want of form in the proceedings where they were substantially correct. There is, however, a substantial defect in these proceedings. The selectmen were directed, not to enquire whether S. were *compos mentis* or not, but to report their opinion of his situation; and in pursuance of this direction they have reported that in their opinion his memory is greatly impaired.

H——
*v.*
S——.

The selectmen seem to have acted with great discretion. To have made a legal inquisition would, under the circumstances, have been a task of some delicacy. They therefore simply complied with the order of the judge of probate and there stopped. There was no inspection of the person, no examination of witnesses as to the state of his mind. From casual observation they had formed an opinion that his memory was impaired, and that opinion they returned to the judge of probate.

But is this the inquisition which the law requires in these cases? We think not. The law reposes great confidence in the judgment and discretion of the selectmen of towns, and in this instance requires their return of the fact whether *compos mentis* or not before a guardian can be appointed. There are good reasons why the enquiry should in the first instance be entrusted to the selectmen of the town. They are in the neighborhood of the person to whom the inquisition relates, and must be supposed to be personally acquainted with him, to know his habits, and character, and general course of conduct. And they must also know where to look for correct information with respect to his capacity. For these reasons their return of the fact that a person is *non compos mentis* is *prima facie* a sufficient foundation for a decree of the judge of probate appointing a guardian.

And without their return of the fact no guardian can be appointed by the judge of probate. This is understood to have been the practical construction of the statutes, which have been cited by counsel; and in Massachusetts, whose statute on this subject we originally copied nearly verbatim, it is essential that the selectmen find the fact. Mass. Statute of 1783, cap. 38, sec. 3; Mass. Prov. & Colony Laws, 515; 8 Mass. Rep. 129, *Darling* v. *Bennet*; 14 Mass. Rep. 222, *Chase* v. *Hathaway*.

When the selectmen find a person to be *non compos mentis* and make return to the judge of probate accordingly, it is competent to such person to traverse the fact before

H——
v.
S——.

the judge of probate, and to bring the cause by appeal to this court where the fact may be tried by a jury.

It is clearly the duty of selectmen in these cases to go to the person to whom the inquisition relates and there diligently enquire as to his capacity. In many cases there can be no difficulty in ascertaining the fact. But in some cases there may be doubt. The state of a man's mind can be known only from what he does and from what he says. Generally, a conversation for a short time with the person would enable selectmen to settle the fact. Where that is found not satisfactory, they should enquire into his conduct and his management of affairs by witnesses under oath. When they have found the fact, whether *compos*, or *non compos*, *mentis*, they should distinctly return it to the judge of probate.

The great defect in these proceedings is, that the selectmen have not found the fact whether the person to whom the inquisition related was *non compos mentis*, or not. It is clearly insufficient to find his memory greatly impaired. For the memory of many a man has been greatly impaired who still retained his reason, and could in no sense be considered *non compos mentis*.

And we are of opinion that for this cause the decree of the judge of probate appointing a guardian must be reversed. It has therefore become unnecessary to give any opinion upon the other objections which have been made to the decree.

*Decree reversed.*