## George C. Reidell *versus* Timothy H. Morse.

Overseers of the poor were not authorized by *St.* 1793, *c.* 59, to bind out a child as an apprentice, unless the parent was actually chargeable to the town, at the time of the binding out, notwithstanding he might have formerly received aid from the town, or unless they had adjudicated or formed an opinion that the parent was unable to maintain the child.

Before making such an adjudication it was proper, if not indispensable, that the overseers should have given notice to the parent, in order that he might be heard on the subject.

Such an adjudication duly made, though erroneous in point of fact, would, *it seems,* support an indenture of apprenticeship under the statute.

An indenture under that statute should recite the cause of the binding out.

In an action by the parent for the services of the child, a recital in the indenture that the cause of the binding out was, that the parent was actually chargeable to the town, may be contradicted by evidence to the contrary.

ASSUMPSIT for the services of the plaintiff's minor son, Henry Reidell. At the trial, before *Morton* J., it appeared that before the performance of the services, to wit, in the year 1830, the plaintiff, whose legal settlement was in the town of Douglas, but who was not assessed to any town charges, left his family, as he and his wife could not agree to live together, and his wife, being in feeble health, applied for assistance to the overseers of the poor of that town, and received assistance to the amount of $10, including the overseers' expenses. Afterwards, in the summer of 1831, the plaintiff reimbursed to the overseers the amount of their expenses and paid them for their trouble, in regard to his wife's board. On the 7th of September, 1831, by virtue of a precept from a justice of the peace, the plaintiff, who still remained separate from his family, was committed to the house of correction for the term of sixty days, as a common drunkard. About this time his wife, being still in feeble health, again applied to the overseers for assistance; and Henry, at the same time, requested of them that he might be bound as an apprentice to the defendant, in order that he might take care of himself. The defendant had previously refused to employ Henry, unless he could be secured in the enjoyment of his services. Upon these applications of Mrs. Reidell and her son, the overseers had a consultation, and they concluded that they ought to place Henry as an apprentice with the defendant; and accordingly, on the 8th of October, 1831, an

indenture was entered into between the overseers and the defendant, by which the overseers bind Henry, "a minor son of George C. Reidell, a person residing in said Douglas and lawfully settled therein, and having become chargeable thereunto, to the said Timothy H. Morse, as an apprentice" to learn the trade of carpenter and housewright, and to serve with Morse until the 11th of March, 1835, when the minor would come of age. The services of Henry were rendered under this indenture, and terminated in the summer of 1833. Henry testified, that after the execution of the indenture he rendered some assistance to his mother ; but it did not appear that the overseers ever furnished any further aid than what is above mentioned.

It was agreed that judgment should be rendered in favor of the plaintiff for $50, if his son was not legally bound out.

*A. Bigelow*, for the plaintiff.

*Barton* and *Deane*, for the defendant.

Morton J. As the parent is bound by nature to support and educate his minor children, so he has a natural right to their guardianship, their society and their services. He cannot be deprived of either, except by the clear provisions of law and the legal exercise of undeniable authority. The only subject of inquiry now before us, is whether the plaintiff has been rightfully deprived of the custody and earnings of his minor son. By *St.* 1793, *c.* 59, § 4, overseers of the poor are authorized to bind out to service poor children in certain specified cases. This authority, being in derogation of natural right, must be strictly construed, and exercised in exact conformity to the powers given and the rules prescribed. It is confined to two cases and to two classes or descriptions of persons. First, to children "*whose parents are lawfully settled in, and become actually chargeable to their town or district.*" Second, to children "*whose parents, so settled, shall be thought by said overseers to be unable to maintain them, whether they receive alms or are so chargeable or not.*"

The power of taking children from their parents and families and homes, and binding them to strangers, as servants, which is here conferred upon overseers, is a high and arbitrary, if not a dangerous power ; and one which should only be exercised

*Reidell*
*v.*
*Morse*

*Oct. 5th.*

*Oct. 9th*

in cases of clear necessity, and where all the circumstances concur, which justify and require so extraordinary an interposition in the domestic relations of private families. Nothing is to be presumed in aid of it ; but every thing which is required for its support, must be shown affirmatively.

The indenture, upon the face of it, appears to be valid. As was necessary, it recites the cause of the binding. It is a sufficient cause ; and doubtless in the absence of evidence to the contrary, would be presumed to be correctly recited. But it appears that it did not exist. The parents were not *actually* chargeable to the town, when the indentures were made. And the fact that they, or one of them, had before been assisted by the town, is not sufficient. A man whose self or wife has once partaken of municipal charity, is not forever after liable to have his children bound out to service. Although the plaintiff's wife had received a little aid from the town, yet the plaintiff had not only repaid the whole amount, but also remunerated the overseers for their personal services. The town therefore, at the date of the indentures, had been at no expense for the support of the plaintiff or any one of his family. And the foundation upon which the indentures were based having thus failed, the indentures themselves must fall.

It is however contended, that there was another ground upon which the overseers might have bound out the plaintiff's son ; and that we must presume that they acted upon it. To this it may be answered, that it does not appear that any other sufficient ground, in fact, existed ; and if it had, we cannot, contrary to their own express declaration, presume that the ground by them assigned was not the ground that they acted upon.

Had the overseers inquired into the circumstances of the family, the means and ability of the parents, and adjudicated or formed an opinion that they were unable to support their family, this would have been a cause which would have authorized them to bind out the son. But there is no reason to suppose that they made any such adjudication. Had they, in the indentures, assigned this as the cause of the binding, it would have been taken to be the true cause. And although the event has shown that it would have been erroneous, yet if they had made due inquiry, acted with due caution and in good faith, we presume

their judgment would have been conclusive.   But now it is not and cannot be known what they would have thought of the subject.   In such an inquiry it certainly would be highly proper to notify the parent, and give him an opportunity to be heard on a question of so much interest to him.   *Commonwealth* v. *Cambridge*, 4 Mass. R. 627 ; *Central Turnp. Corp. Petitioners*, 7 Pick. 13 ; *Chase* v. *Hathaway*, 14 Mass. R. 222 ; *Hathaway* v. *Clark*, 5 Pick. 490.   But whether this would be indispensable, we do not think it necessary to determine.   The law itself was so arbitrary and so liable to abuse, that it was repealed by the Revised Statutes.   See *c.* 46, § 22, and *c.* 80, § 6.

It does not appear that the overseers made any investigation or formed any opinion in relation to the plaintiff's ability to maintain his children, or attempted to bind out this son because they *thought* he was unable to maintain him.   But it does appear from their own solemn recital, that they bound him because his parents had become actually chargeable to the town. Now as no such cause existed, the authority fails, and the indentures are a nullity.

*Defendant defaulted.*