Read, J.,’
dissenting. I am of .opinion- that notice to the. heirs was necessary to give jurisdiction under the act of 1824, and that no notice was given to the lessors of the plaintiff affording them an .opportunity to resist the application for a sale of their lands. . .
■ A majority of the Court, however, hold that proceedings by administrators to subject lands to the payment of debts .have always been,' and .are now, in.rem, and not of an ádversary character; and that- full jurisdiction -is acquired when the petition is presented, so that all the owners of land; whether minors' or adults, are bound, although not notified. They further hold that- if notice to the heirs was necessary to sustain the proceedings on certiorari; such notice was given to them in the present *705 case by the appointment of a relative to appear for and defend them, and by the apjpearance of other relatives.
Both these propositions are novel and startling. It is expressly enacted by the act of 1824, under which the proceedings now in question were had, “ that the lawful heir, or the £ person having the next estate of inheritance of the testator, £ or intestate, shall be made defendant.”. This Court, in Ewing v. Hollister, 7 Ohio Rep. 142, pt. II, declare that it was unquestionably the intention of the law that those who were interested in the estate should have an opportunity to show that no necessity existed for the sale of the lands ; and this intention would have been entirely defeated upon any other supposition than that notice should be given. And in Lessee of Ewing v. Higby, 7 Ohio Rep. 201, the language of the Court is, “the ‘ object of the law was that the heirs should have notice of the ‘ application of the administrator for an order to sell their land.” In Adams v. Jeffries, 12 Ohio Rep. 274, the Court say: “ The £ heir has a right to be a party to the proceedings which deprive £ him of his estate, and we are constrained to deny the jurisdic- £ tion of a court which attempts to proceed without him. It £ will be perceived that this opinion affects no proceedings except those since 1824.
It is now said by a majority of the Court that, in this latter case, it was not proved that there was a petition. But the order for sale was put in evidence, and that order mentioned the petition. The Court there refused to presume the jurisdictional fact of notice to the heirs, on the express ground that the proceed ings were those of a court exercising, in this instance, a special and extraordinary jurisdiction conferred by statute, contrary to the course of the common law. The Court specifically decided that an administrator’s sale, made under an order of court since 1824, was void if the heirs were not made parties; and the-proceedings were held to be a nullity on that ground, and not on the ground that there was no petition. . As to similar proceedings before the act of 1824, they were ex parte, but in that year the Legislature, deeming that practice unjust, enacted that *706 the owner of the property should have an opportunity, by resisting the application, to condemn it for alledged debts.
The ancient practice of selling the land in the hands of the heirs, without making them parties, has been complained of by high authority, “'as contrary to the plainest principles of justice 4 Kent’s Com. 422; Gibson, C. J., 13 Serg. and Raw. 14. The Legislature of this State having abolished that practice, we have no right to affirm its validity by calling the proceedings since 1824 “in rem,” merely because there is no judgment for costs, to be made a charge on the defendant himself.
The question is not whether land is too sacred to be appropriated to the payment of debts, but whether the rule that the owner of property shall not be deprived of it without his day in court, guarantied by the law, shall be violated..
The administrator is the legal owner of the personal estate of the decedent, but not of the real estate. As the law has cast the ownership of the latter upon the heir, he is entitled to the benefit of the first and most important rule ill the administration of justice, lying at the foundation of all the rest.
And I will add, that even previous to the passage of the act of 1824 the heir was, by legal implication, (see 1 Hill’s N. Y. Rep. 131,) entitled to his day in court, under the statute authorizing a sale of his lands, those statutes not having expressly deprived him of that right. But as he was deprived of it by judicial construction, it was deemed proper to enact positively, that he should be allowed an opportunity to resist the application. And now this enactment is to be nullified by the decision of this Court.
It is said that the authority to ascertain whether the decedent was indebted is vested in the executor or administrator, who may liquidate all claims against the estate; and it is intimated that a court of probate, on an application for án order to sell, has nothing to do with those matters, and yet it is afterwards said (and correctly) that the court is “ to ascertain whether ‘ there are debts — whether the personal assets are sufficient to £ pay those debts — whether it is necessary that all or any part of *707 c the real estate shall be sold for their satisfaction.” The owner of the real estate is deeply interested in all these questions. He may show that the claims are unfounded when- they are sought to be made a charge'upon his' property — and the decision of the administrator that they are not unjust, only affects the personal estate.
But it is said, that if before the act of 1824 the proceedings were in rem, they are still so, because the order of the Court operates upon the land alone. According to this opinion.a citizen may- be deprived of his land, or any specific portion of his property, without having a day in court, even although the statute expressly requires that he' shall have an opportunity to be heard before his property is condemned. It is ;only nécessary to give a nickname to judicial proceedings to say they are in rem, and the statute law is repealed, and a fundamental right destroyed. According to the opinion just delivered, all proceedings are in rem where the judgment or decree binds only the property in controversy. If that were so, real actions' of ejectment, and suits in chancery for the recovery of land, would not be adversary proceedings, except - as regards costs. Real actions, before the statute of Gloucester ■ allowing costs, were, on this hypothesis, not adversary proceedings. The proposition is alike destitute of reason and authority.
It is á cardinal principle in the administration of justice, that no man can be condemned and divested of his rights until he has had an 'opportunity of being heard; 1 Hill’s N. Y. Rep. 139. And it does not matter whether there is or is not- a,judgment for the costs. U No lawyer will 'controvert the position, ‘ that 'to uphold and give validity to the proceedings of a court, e it must have jurisdiction of the person of the defendant and of ‘ the cause. This principle is applicable to all courts, from the ‘ highest to the lowest;" Mills v. Martin, 19 Johns. Rep. 33. “ It is a fundamental principle of justice, essential to every free £ government, that every citizen shall be maintained in the enc joyment of his liberty and property, unless he has forfeited ‘ them by thé,„standing laws of the community, and has had an *708 ‘ opportunity of answering .such charges- as, according to those ‘ laws,.will justify a forfeiture or suspension of them.” Chase v. Hathaway, 14 Mass. Rep. 222.
. That fundamental'-principle .is subverted b.y the opinion just delivered, by a majority of this Court.
It is contended by counsel for plaintiff, that the decision in Grignon’s Lessee v. Astor, 2 Howard’s U. S. Rep., is opposed .to the decision in Adams’ Lessee v. Jeffries, 12 Ohio Rep. 274, in which last cas.e it was decided that notice to the heirs was necessary to give the Court jurisdiction.-
I do not so.understand it; and,it-is'also clear, that the definition of proceedings in rem, just pronounced by.a .majority of this Court, is not affirmed by Judge Baldwin in that, case; .for, so far from saying that proceedings-.are in rem, where the judgment or decree is confined-to the condemnation-of-, a specific piece of property, he says, that Where there are' adversary par-. ties, the Court must have power over the' subject matter and' the parties, but-thát, in'.Michigan,- the administrator' represents the. land, sb 'that. the petitioner himself being the representative: of the land,, the-subject of the petition,'there are no'adversary parties• to • the suit..'"In-this State,-, the administrator.does not represent the lánd, .and a judgment'-against him is not.a lien upon the .lands of the- decedent. Wherever there afe adversa- . ry parties the proceeding is not in rem, and it,is perfectly immaterial whether the judgment binds ' the whole or only a specific-part of the defendant’s-property. It is manifestly wrong to say that a man’s estate may be snatched from him without giving any.notice, where-a statute requires him to be made .a defendant to the- proceedings.' Such- a doctrine cannot be permanently established in a community which has utterly refused to confer absolute power, even on the immediate . representatives of the people.' : : , ■
'.With regard to what hás been said, as to a cotemporaneous ' construction of a statute, I must observe, that it is not pre- . tended-that;..under the act of 1824, the heirs are not entitled to notice, . On .the contrary, in Ewing v. Hollister, the Court *709 say : “ Under the act of 1824, I have no doubt that the heir e should have notice. To insert his name in the petition merely, c without permitting him to know of the proceedings, would be ‘ but a mockery.” It is hard to believe that airy Court, in the most benighted part of the State, ever put any other construction upon the statute. That some negligent attornies may have omitted to cite the owners of land, whether adults or minors, is probable, and it is also probable that, in some parts of the State, the profession have supposed that even minors, old enough to nominate their own guardians, need have no day in court in any case in chancery, or under the statute authorizing the sale of lands to pay debts. But, certainly, there has been no such cotemporaneous construction of the- statute as that now suggested. The statute of 1824 has not generally been construed to mean that the heirs need not be mentioned.in the proceedings, or that it was sufficient to name them in the petition. And even if this construction had been put upon the statute by inferior tribunals in some parts of the State, it would not form part of the law of the land. There is not a shadow of pretence for saying that the cotemporaneous construction of the statute has been, that it authorized proceedings without making the' owner a defendant. If such a construction had been put upon the statute, adult owners would not have been notified. Yet it is not alledged to have been the practice to omit such a citation of adults, but only that in some parts of the State minors have been allowed in -chancery, and in other cases, no day -in court. The effect of this partial practice is said to be, that wherever it has existed, it is binding; but I cannot perceive on what principle that can be so. ' Any such opinion is directly opposed to the decision of this Court in the Lessee of Grey v. Askew, 3 Ohio Rep. 479, and to the current of authorities.
The act of 1824 required the owner to be notified, and the question remains, whether a minor is notified at * all by the action of the court appointing some person to defend for him.. In my opinion, this does not amount to a notification of the *710 minor, and, indeed, the question here is not a question whether a reasonable notice has been given. No notice whatever was given, either reasonable or unreasonable. And the Court, taking it upon itself to adjudicate against the minor, does not in such cases pretend to determine that he has been notified;, it goes upon the assumption that it has power to act, where minors are concerned, without giving them any notice. Court's of chancery are not the guardians of minors in this State, whatever may be the case elsewhere; and, clearly, the Court of Common Pleas, acting under the statute authorizing sales of land to pay debts, is not the guardian of minors. The appointment of guardians is vested in the Court of Common Pleas for each county, and it is worthy of observation that a guardian cannot be appointed for a male over fourteen or for a female above twelve years of age, until he or she has been notified to appear and choose his or her guardian. Hence, it is incorrect to say that the only object of notifying a minor of an application to sell his land is to give his friends notice, for that is not the only object when the minor is old enough to nominate his own guardian ad litem. It is to give himself notice. If the minor be too young for that, the citation is designed to give his general guardian or any other person in loco parentis, or the parent, notice.
The Court of Common Pleas was not the guardian of minors, and could not act until it obtained jurisdiction of the persons of the owners, whether minors or adults. The Court did not, by the appointing a guardian ad litem, adopt any practice or mode of notifying the minors, but held that it had jurisdiction without notice. This was a total mistake. The case of Chase v. Hathaway, 14 Mass. 222, and Smith v. Burlingame, 4 Mason’s Rep. 121, are in point. It is also to be observed, that where a court has jurisdiction, by statute or otherwise, to render a judgment or decree against minors, without notifying them or their guardian, the jurisdiction cannot be exercised after the minors have arrived at full age, when the order for sale was made, as were the defendants, they having been also *711 above fourteen when the proceedings were commenced. In Bustard v. Gates, 4 Dana 435, Robertson, C. J., declared, that a man must be a knave or a fool who says that the appointment of a guardian ad litem, for minors, is a notice to them. And it was held in Collard v. Groom, 2 J. J. Marsh. 487, and in Shaeffer v. Gates, 2 Benj. Monroe 455, that minors are not cited at all by such an appointment. It is true that, in Bustard v. Gates, the Court held, that minors are bound without being cited, and that the want of jurisdiction over the person, whether minor or adult, is only error. I am of opinion, that persons not made parties to an adversary judicial proceeding, are not bound by it, and that they are not confined to the remedy of a writ of error. If such were the only remedy, they would lose their property, and merely have a right to pursue a stranger for the purchase money. It is the duty of judges to guard carefully, and, at all hazards, to preserve the citizen’s right to a day in court, before he is deprived of his property, his liberty, or his reputation; and a right so sacred should never be taken away by implication or construction, when it can possibly be avoided.
This Court asserted, in the Lessee of Good v. Zercher, 12 Ohio Rep. 367, “ that it is the principle object of our political £ organization to secure each individual in the enjoyment of his £ natural rights; and the chief glory of every citizen, however ‘ humble or weak, to feel, in the omnipotence of constitutional £ protection, that there is no power under God that can deprive £ him of his property or his rights. That the government itself £ under which he lives is less than the individual man, except as £ it acts within the legitimate sphere prescribed by the people £ wh omade it.”
It is said, Ewing v. Hollister is a case in point to sustain this - order of sale. No distinction is noted between the appearance of the general guardian for minors, representing their persons and estates, and a mere guardian ad litem, appointed by a court having no jurisdiction over the person sought to be affected. That case affirms the necessity of reasonable notice *712 to the minors, , and it is conceded that a notice in itself utterly unreasonable is nugatory. The case therefore is,- in point, against the order of sale. . .
Under the circumstances presented in the present case, it was necessary to serve a notice upon the minors themselves, according to the ordinary mode of serving process; for it is not shown that they had any guardian, and they were old enough to nominate their own guardian ad litem. I find that whomever a great principle is allowed to be broken in upon, there is no limit to the aggression.
So far from having been generally held as stated in the opinion just pronounced, that decrees in chancery against minors, without giving them notice, are valid, not a single case can be found to that effect, unless the court in chancery was itself the guardian of the minors. It is true, plaintiff’s counsel refer to an unreported decision of Judge McLean, on the circuit, to the effect that jurisdiction is to be presumed; and it is said, Judge McLean expressed his opinion to be, that the want of a citation of a minor in a chancery case was only error. That opinion is opposed to Judge Story’s decision, in 4 Mason 121, and to the whole current of authorities. As to proceedings in common law and other courts, which do not pretend to be the guardians of minors, the proposition that they can divest minors of their property in adversary proceedings, without giving them a day in court, is a plain outrage upon common sense.
If the Court of Common Pleas had adopted a practice of notifying minors in any particular .manner, that practice must have been such as to afford the heir a fair opportunity to contest the application; Ewing v. Hollister. A practice to contravene the law of the land, and give no notice, cannot be sanctioned. No court was ever absurd enough to suppose that it was citing minors, by appointing a person to defend for them. It is said, that in the present case, a brother, and a sister, and a cousin of the defendants, had notice of’ the proceedings, and that their mother was dead. There is no evidence to *713 show whether the minors had guardians, but the record purports to set out what the notification was; and it does not appear that the minors were cited in any mode whatever, either by a notice left at their residence or otherwise.
It is contended by counsel, that a citation of the heirs should be presumed, in support of the order of sale. This Court decided, in Adams v. Jeffries, 12 Ohio Rep. 274, that no such presumption could be raised. When a common law judgment is produced, the previous proceedings are presumed; but the presumption may be rebutted, and the want of process may often be shown by production of the full record. Thus, if the record is required by statute to set forth the process, and the exemplification of it, when produced, contains no allegation that process was issued, it cannot be presumed that there is an omission from the record of what the statute requires to be inserted.
It has also been said, that if a summons had been issued and served on the minors, the result would have been the same; that it is not pretended any injustice has been done. I have no means of judging whether the result would have been the same; but I find that the counsel for the defendants insist that, if they had been cited, they might have shown that the debts, alledged to be due, were not charges on their estate; that there might have been a new or different appraisement, more competition at the sale, or that the confirmation might have been successfully resisted. Whether any injustice was actually done, we have no means of ascertaining; and if evidence had been offered at the trial to that effect, by the defendants, it must have been rejected by the Court below as irrelevant. The purchaser at the administrator’s sale had nothing at all to do with that matter, but, on the contrary, had only to inquire whether the Court had acquired, and had exercised jurisdiction.
We are informed that, in some parts of the State, it was formerly the practice to give notice to the guardian or near relatives of minors; that, in other parts, service of process was *714 made personally upon minors, and that, in other parts, no notice at all was given. This is said to have been the. practice in chancery, and upon petitions, by administrator's, for orders of sale. And we are told that, .where it was the practice for some time to give no notice to. the owners of .the land, such owners were bound, although, in-the next county, it may have been the practice to serve a writ of summons. I deny; altogether, that the sacred right to a day in Court can be destroyed upon any such pretext.
Arguments are constantly being- addressed to the Court, as if it had absolute power to divest the title of minors, married women and absentees,' because -their claims' are numerous, and tend to disturb the quiet of ancient trespassers and 'negligent purchasers. The Legislature having refused to . aid the parties, by limiting the period for prosecuting ejectments, &c., an appeal is made from the Legislature to the Court, and, on grounds of public policy, it is called upon to declare that minors have no right to a day in Court; that -any man’s property may be taken from him ’ by judicial proceedings, of which he had no notice; that deeds executed by married women, not proved to have, had the protection which the law required, are valid.
We have denied the power of the Legislature to pass curative laws, divesting the titles of those who have made no contracts to part with their property-;'and I must refuse to this Court the power to do more, in that respect, than the direct representatives of. the people. The Legislature may enact statutes of limitation for the protection of ancient estates, but we can enact- nothing, our sole function being to administer the law according to its letter and its spirit. No court has the' power' to set at nought the statute law, or the eternal principles of right and justice, for the preservation of property, unlawfully acquired. It cannot therefore affirm the validity of adversary proceedings, condemning the property of those who have had no day in Court. Unless we substitute erroneous practice for legal principles, and by the blunders of courts supplant the constitution, the judgment in this case below must be affirmed.