LEVI B. MERRIAM *vs.* MOSES SEWALL & another.
WARREN WHITE *vs.* SAME.

A creditor of an insolvent debtor, who attaches his property after the commencement of proceedings in insolvency and before the assignment, has sufficient interest to maintain a bill in equity to set aside the proceedings. But if the attachment is not made until after the assignment, *quære.*

The want of an authorized signature to the petition of a creditor under the insolvent laws is ground for setting aside the proceedings.

*It seems,* that a commissioner of insolvency has power to allow a creditor's petition to be amended so as to set forth more precisely and fully the debt originally relied on.

The facts stated in a creditor's petition under the insolvent laws must be proved by legal and competent evidence; and *it seems,* that taking the testimony of a material witness without oath or affirmation, is ground for setting aside the proceedings.

A decree of this court in equity, affirming the validity of proceedings in insolvency, upon a petition of the debtor to set them aside, is conclusive against any subsequent application by a creditor to set aside the proceedings on the same and other grounds; even if this creditor had no notice of the first petition to this court.

BILLS IN EQUITY by creditors of Stephen G. Bass, to set aside proceedings in insolvency against him.

Merriam's bill alleged that the plaintiff commenced an action

against Bass on part of his claim, and attached his property on the 21st of March 1855; and that the defendants pretended to be assignees of his property, and had demanded the attached property, and commenced suits therefor against the attaching officer.

The bill also alleged that the proceedings in insolvency were commenced by petition to a commissioner of insolvency on the the 13th of January 1855, (a copy of which was annexed to the bill,) which alleged that the Boylston Bank had a debt or demand against Bass on a draft for $2,500, which was described in general terms; and "that they believe said Bass is insolvent, and that he has made fraudulent conveyances or transfers of his property or some part thereof; that among the conveyances so made was one of real estate in said Brookline to Jonathan Ellis, on the sixteenth day of December, now last past; also, one other conveyance of real estate, situated in said Brookline, to Warren White and Levi B. Merriam, of the same date; also other conveyances of property since said sixteenth day of December, to said White, Ellis, Merriam, Otis Norcross, Warren Fisher, or some of them, the particulars of which cannot now be given, or the exact dates when such conveyances were made; but they beg leave to insert the same when they shall be fully known. And your petitioners further represent, that they believe that, at the time of the conveyances aforesaid, the said Bass was insolvent, and that at the said time said Bass had no reasonable cause to believe himself solvent; and that said grantees or vendees had at that time reasonable cause to believe said Bass insolvent."

The bill then alleged that "thereupon a hearing was had on said petition, and the petitioner offered certain evidence, and the said Bass offered no evidence; and after all the evidence was closed, the said petitioner offered a new petition, in the form of an amendment to his original petition, which was objected to by said Bass, but which was allowed by said commissioner."

The amended petition (a copy of which also was annexed to the bill) contained a copy of the draft or bill of exchange relied

27 *

upon, and amended the statement of the fraudulent convey-ances thus : " Said petitioners allege that on the twenty-second day of December now last past a certain ship named The Aetos, at Eastport in Maine, in which said Stephen G. Bass was interested, and, with his consent, was conveyed to Levi B. Merriam, Jonathan Ellis, Warren Fisher or Warren Fisher & Co., Warren White, and Otis Norcross & Co. or Otis Norcross, to secure preëxisting debts among said several persons : that afterwards, and on or about the twenty-fifth of said December, the brig Haven Goddard was conveyed to said Levi B. Merriam and others; also a certain mortgage was made, on or about the same day, of a stock of goods in a store kept by said John W. Bass at said Eastport, together with a conveyance of book debts to Warren Fisher & Co. and Otis Norcross ; also one half of the brig Stephen G. Bass to said Norcross ; also the brig Brookline to said Norcross ; also the brig New Era to Jonathan Ellis ; also the house and furniture of said John W. Bass to said Norcross ; also forty four shares of a steamboat company to Warren Fisher or Warren Fisher & Co. And your petitioners further allege, that in all or the greater part of said property said Stephen G. Bass had an interest; that the same was conveyed with his knowledge and consent, and that his interest therein was conveyed, at the time aforesaid, with his knowledge and consent; that the conveyances of said property were made to secure preëxisting debts which said Bass owed ; that at the time of such conveyances said Stephen G. Bass was insolvent, and that the same were made intending to give said preëxisting creditors a preference, and at that time said Stephen G. Bass had no reasonable cause to believe himself solvent."

The petition and amended petition were both signed by " T. Gilbert for the Boylston Bank."

The bill then alleged that the proceedings in insolvency were irregular and illegal in the following particulars :

" 1st. The said petition and amendment, or either of them, do not contain allegations apt to charge the said Bass with such conveyances of his property as would authorize the issuing of a

warrant against his estate under the insolvent laws of the said commonwealth.

" 2d. The said amendment was improperly allowed by the said commissioner.

" 3d. The several allegations in the said petition and amendment were not proved by competent and legal evidence.

" 4th. All the evidence touching the amendment was allowed by the said commissioner to be put in, the said Bass objecting thereto, for a specific purpose and object; and after all the evidence was closed, the amendment allowed and the witnesses dismissed, the petitioner was permitted to use the said testimony generally to support the allegations in the said amendment and for a purpose other than that for which it had been admitted.

" 5th. The testimony of one Jotham Buck, a material witness for the petitioner, was taken without the solemnity of an oath or affirmation, or of any form whatever.

" 6th. There was no evidence offered tending to show that Timothy Gilbert was duly authorized to sign the said petition and amendment, or either of them, on behalf of said corporation ; and your complainant alleges that he was not duly authorized."

White's bill contained substantially the same allegations as Merriam's ; and also an allegation that " the claim which was the foundation of the proceedings was a draft discounted by the Boylston Bank, the petitioning creditor ; and that said bank, in discounting said draft, took a greater rate of interest and exchange than was allowed by law, and that draft was therefore null and void, and did not constitute a claim against Bass, which could be made the foundation of proceedings in insolvency against him."

The defendants filed a demurrer to each bill, for want of jurisdiction, and want of equity, upon which the cases were argued together in writing, by *W. Brigham*, for the defendants, and *S. Bartlett & J. G. King*, for the plaintiffs.

SHAW, C. J. These are bills in equity, brought by the plaintiffs, as attaching creditors of the estate of Stephen G. Bass,

against the defendants, as assignees of said Bass under pro-
ceedings in insolvency, commenced against him by an applica-
tion *in invitum*, on the petition of the president and directors of
the Boylston Bank.   In Merriam's case there is a general de-
murrer to the bill, assigning for cause, 1. Want of jurisdiction.
2. No case set forth for relief in equity.

I. The court are of opinion that they have jurisdiction in
equity of the matter set forth in this bill.   This jurisdiction in
insolvency is given by the original statute, *St.* 1838, *c.* 163, § 18,
by which the supreme judicial court has jurisdiction as a court
of chancery, in all cases under this act; and have power to hear
and determine all cases not otherwise provided for, upon the bill,
petition or other proper process of any party aggrieved by any
proceedings under this act.

The only doubt which could arise in the present case would
be, whether the plaintiff in this case is a " party aggrieved,"
within the true meaning and intent of the statute.

If his attachment was before the commencement of the insol-
vent proceedings, it would be entirely clear that he has this
remedy.   By the attachment he has a lien on the goods or
lands attached; such a lien is a specific proprietary interest in
the property, and, if not defeated, may ripen into a perfect title.
But if these proceedings were regular, they would dissolve the
attachment and defeat that interest by operation of law.   *Smith*
v. *Bradstreet*, 16 Pick. 264, and many other cases.   The grounds
of this rule are, that a party cannot be said to be aggrieved by
a decree or adjudication, because he has some uncertain, pos-
sible or contingent interest, which may be affected by it; but
otherwise, if he has some vested right or pecuniary interest to
be divested.

But we are also of opinion, that if the attachment preceded
the assignment of the property of the insolvent by the commis-
sioner, it is sufficient to give the plaintiff an interest in the
property.   It is the assignment, which transfers the property of
the insolvent to the assignee.   The seizure on the warrant, before
that is a mere sequestration, in the nature of an attachment on
mesne process for all the creditors.   The general right of prop-

erty remains in the debtor until the assignment. The attachment then, when made, creates a lien, subject only to a prior lien of the creditors, if the proceedings are regular and an assignment is subsequently made.

It does not distinctly appear on this bill, that the attachment preceded the assignment; but nothing appears to the contrary, and both parties argue it on the assumption that the attachment was before the assignment. The defendants' argument states the dates — that of the attachment March 21st 1855, and the assignment March 27th 1855.

The consideration that the assignment is declared by the *St.* of 1838, *c.* 163, § 5, to be conclusive of the regularity of the proceedings, in all suits brought by the assignee, gives some effect to the principle that, where the plaintiff relies upon his right as attaching creditor, and intends to support that right by impeaching the proceedings in insolvency and setting them aside, he must show that such attachment was made before the assignment.

Whether the plaintiff, upon his general right as a creditor, having no attachment to sustain, could bring this suit as an aggrieved party, we have no occasion to express an opinion in the present case; nor whether he could maintain such suit, as an attaching creditor, in virtue of an attachment made after the assignment.

We are aware that, in the case of *Hanson* v. *Paige*, 3 Gray, 242, the complaint was made by an attaching creditor, who attached some time after the assignment; it was held, that the court had jurisdiction, though the proceedings were not in fact in that case vacated. But the point was not made, whether the complainant was a party aggrieved; and perhaps all parties wished the opinion of the court upon the regularity of the proceedings, and for that reason forbore to object to the complainant's bill on the ground that he was not an aggrieved party. The court decided only that the complaint in equity was the appropriate remedy for the party aggrieved by the irregularity of the proceedings. We do not in the slightest degree call in question the authority of that case; the point now suggested

was not raised or adjudged; the mind of the court was not turned to it; and whether the objection would, if taken, have prevailed to defeat the bill or not, is immaterial to the present case.

The objection to it, if any, is, that if any creditor, at any stage of the proceedings, cannot maintain a bill to set aside proceedings, after titles to property have been made and various rights acquired under it, upon exceptions which, if available at all, should be taken *in limine*, it would be attended with great inconvenience, especially as there is no provision by law, as in the analogous case of proving a will or granting administration, that an appeal is limited to a particular time. Perhaps it might be held, upon a bill or petition to annul the proceedings, that the matter, as a case in equity, would be subject to the judicial discretion of the court, under which they would hold that proceedings should not be set aside for irregularities, unless, upon a petition brought early, before the proceedings in insolvency had been much advanced. *Penniman* v. *Freeman*, 3 Gray, 245.

II. Do the plaintiffs show enough to entitle them to relief in equity; in other words, do they set forth sufficient reasons for vacating the proceedings?

They allege that the proceedings against Bass were founded on a petitioning creditor's debt, which was that of the Boylston Bank. The demurrer admits the truth of all matters well pleaded, that is, in the application of the rule to the present case, the demurrer admits, for the present hearing, all the facts set forth in the bill in such form that they could be put in issue and tried.

1. The original petition of the Boylston Bank is annexed and made part of the bill. It is signed by the bank by T. Gilbert. It is alleged that no evidence was offered to show that Gilbert was authorized; it is also alleged specifically, that Gilbert was not duly authorized. This is well pleaded and admitted by the demurrer. If there is no sufficient petition by the bank, it is not enough that they were creditors; they were not petitioning creditors. A petition lies at the foundation of proceedings *in invi-*

*tum ;* as the case stands, there was no petition by the bank, and therefore all the proceedings thereon were irregular. It is not enough that no proof of Gilbert's authority was called for; that was an affirmative fact, without proof of which the commissioner had no jurisdiction.

2. We are not prepared to say that the allowance of an amendment to the petition was irregular; after the parties were duly summoned and were before the court, it seems conformable to established analogies to allow formal amendments, and incidental to the powers vested in the commissioner. See *O'Neil v. Glover,* 5 Gray, 158. We do not perceive that the amendment substitutes another claim; it states the bill of exchange, on which they originally relied, more precisely and fully. And the same remark applies to the conveyances alleged to be fraudulent.

3. It is alleged that the petition was not proved by competent evidence. This perhaps is too vague and uncertain, to be considered well pleaded, so as to be admitted by the demurrer; but in the next clause it is alleged that the testimony of one Jotham Buck, a material witness for the petitioner, was taken without oath or affirmation.

This possibly may be open to explanation, if the fact were so, and if it would be a good answer that the witness was not sworn, through inadvertence or mistake, as stated in the argument. But as it stands, it seems to be an averment that evidence was taken without oath or affirmation, intentionally and with the knowledge of the commissioner. And this is admitted by the demurrer. If this were so, it would seem to be an irregularity. The facts proved before the commissioner must be proved by legal and competent evidence.

4. It is stated, in the defendants' argument, that a previous petition or bill, in the nature of an appeal from the judgment of the commissioner, had been brought before this court by the insolvent, in which it was decided that the proceedings were valid.

This, of course, not appearing in the bill, cannot be taken notice of on demurrer. The only purpose of alluding to it

here is to remark, that if the defendants mean to hold or rely on the analogy, that this is in the nature of a probate proceeding, and an appeal therefrom, and that one adjudication on the regularity of the proceedings ought to be final, he must set forth those proceedings with proper averments in his answer or plea, in the nature of a bar; and that is the only mode in which the decision of the court, on that matter, as *res judicata*, can be brought before the court in the present case.

The case of White against the same defendants is placed on the same grounds, except that one additional reason for setting aside the proceedings is thus stated : That the Boylston Bank discounted the draft, on which their petition was founded, at a greater rate of interest than six per cent. and so, by the provisions of law, the draft was wholly void. Rev. Sts. *c.* 36, §§ 58–60.

The question is, whether, if the facts are so, the bank could prove this debt. If they could not, if it was not a debt provable against the estate of the insolvent, then there was no good foundation for these proceedings. The answer, which the defendants make to this part of the case, seems to imply, that they consider it as founded on the general provisions of the Rev. Sts. *c.* 35, § 2, which do not make the contract affected with usury void; and treat that as a sufficient answer to the objection. But it appears that the objection is founded upon the above provisions applicable to banks alone, and prohibiting them from discounting any note at a larger rate than six per cent., under a penalty; and this would present a serious question. If the defendants intended, by their demurrer, to admit that the bill of exchange was discounted by the bank at a greater rate than six per cent., contrary to the prohibition of the statute, it would be solely a question of law. But as the demurrer must be overruled on other grounds, and, should the defendants move for leave to put in an answer, the facts on which the objection rests would be more distinctly presented, we have thought it not necessary or expedient to express an opinion on this question, in the present stage of the cause.

*Demurrers overruled.*

The defendants then filed answers, alleging that the regularity and legality of the proceedings in insolvency in the case of Bass had been fully settled by the judgment of this court on a petition of Bass.  At a hearing before *Thomas*, J., at November term 1857, the following facts appeared :

Bass, at February term 1855, filed a petition, in the nature of an appeal from the decree of the commissioner, declaring him insolvent, and alleged the same grounds for setting aside the proceedings in insolvency, as those now set forth in the bills of Merriam and White, except the permission of the use of testimony for purposes other than that for which it was introduced, and the illegality of the draft.

Upon that petition of Bass, notice was ordered to be given by Bass to the commissioner, and to the creditor petitioning against him before the commissioner.  No other notice was ordered or given upon the petition of Bass ; and neither these plaintiffs nor any other creditors of Bass were made parties to that petition, or appeared therein.  The commissioner and said petitioning creditor made answers in said proceeding; and on a hearing, before a single judge of this court, the petition of Bass was ordered to be dismissed, and a bill of exceptions was presented to said judge, and allowed, but afterwards, and after the filing of these two bills in equity, those exceptions were waived by Bass.

At the hearing upon these two bills, it was stated by one of the counsel for the plaintiffs, who was also of counsel in the case of Bass, that at the time these exceptions were waived, the counsel in that case, upon consultation, were of opinion that, upon these exceptions, only a part of the points raised by these bills could be determined, and that it would therefore be a waste of the time of the court to proceed further in that case ; and that this was the reason which induced the counsel to advise that those exceptions should be waived, and that this was stated to the court when they were waived.

The presiding judge was of opinion that the proceedings by Bass were conclusive upon the subject matter of the bills of these plaintiffs, and ordered their bills to be dismissed, sub

ject to the opinion of the whole court, before whom the case was argued upon this report at March term 1858.

*B. R. Curtis & King*, for the plaintiffs. It is a principle of universal jurisprudence, that a judgment or decree binds only parties and privies. There was no legal privity, in blood or estate, between Bass and these plaintiffs, touching this subject matter; but their proceedings were adverse to him from the beginning, and throughout.

Neither were the plaintiffs parties to the petition of Bass; for the bill did not purport to be on behalf of any one except Bass, nor against any one but the petitioning creditor and the commissioner of insolvency. Nor was any notice, either actual or constructive, ordered or given to the plaintiffs.

That the petition of Bass was in the nature of a proceeding *in rem*, and might have been so framed and conducted as to bind all the world, does not render it binding on the plaintiffs, if it was not so framed and conducted as to make them parties, with the right to appear and act as such, and with legal notice, making it incumbent on them to appear, or suffer a decree by default. *Shrewsbury* v. *Boylston*, 1 Pick. 105. *Crease* v. *Babcock*, 10 Met. 534. *Finley* v. *Bank of United States*, 11 Wheat. 304. *Wiswall* v. *Sampson*, 14 How. 67. *The Mary*, 9 Cranch, 126. *Hallett* v. *Hallett*, 2 Paige, 19. *Egberts* v. *Wood*, 3 Paige, 517. *Baldwin* v. *Lawrence*, 2 Sim. & Stu. 26.

The Bill of Rights, art. 12, provides that no subject shall be deprived of his property, immunities or privileges, but by the judgment of his peers or the law of the land ; that is, by " due process of law ; " which implies and includes regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceedings. *Chase* v. *Hathaway*, 14 Mass. 222. *Murray's Lessee* v. *Hoboken Land Co.* 18 How. 280, and authorities there cited.

It appears by the report that the questions sought to be raised were not fully heard and determined on the petition of Bass. The additional grounds stated in these bills are material and important to these plaintiffs, who are parties aggrieved by the proceedings of the commissioner in those particulars. Yet the

ruling in this case precludes the plaintiffs from trying the validity of the defendants' appointment in the only way in which they can be heard thereon.

*Brigham,* for the defendants, cited *Livermore* v. *Swasey,* 7 Mass. 213; *Litchfield* v. *Cudworth,* 15 Pick. 23; *Loring* v. *Steineman,* 1 Met. 204; *Baxter* v. *New England Marine Ins. Co.* 6 Mass. 277; *Woodruff* v. *Taylor,* 20 Verm. 65; *Wright* v. *Watkins,* 2 Green, 547; *Williams* v. *Sharp,* 2 Ind. 101; *Vanderpoe.* v. *Van Valkenburgh,* 2 Selden, 190; *Bogardus* v. *Clark,* 4 Paige, 623; *Swett* v. *Sherman,* 2 W. Bl. 977; *Hart* v. *M'Namara,* 4 Price, 154 note; *Garber* v. *Commonwealth,* 7 Barr, 265.

THOMAS, J. No direct appeal is given by the statutes from the decree of the commissioner, by which a warrant has been issued against the estate of the debtor. The validity of the proceedings can only be tested by a petition to this court sitting in equity, under the provision of the *St.* of 1838, *c.* 163, § 18. Such petition is in the nature of an appeal, with its legal incidents.

If the statute had given to the debtor or his creditors the right of direct appeal from the decree of the commissioner, it is quite plain that the affirmation or reversal of the decree in this court must bind and conclude all parties in interest. There could be but one appeal, and one judgment upon that appeal; and that judgment must be conclusive as to the subject matter of the decree from which the appeal was taken. It is in the nature of a judgment *in rem,* the thing being the estate of the debtor and its sequestration for the benefit of his creditors.

To allow separate appeals by the debtor and the several creditors would be to keep the estate forever open and in controversy. The question might be differently decided upon the evidence of different states of facts.

The same evils indeed would follow as from permitting the question of the validity of the proceeding to be tried collaterally in suits at common law, brought by the assignee. *St* 1838, *c.* 163, § 5.

In suits prosecuted by the assignee, the assignment is made conclusive evidence of his authority to sue, precisely because

it was intended that the question of the validity of the assign·
ment should be tried and conclusively settled in a proceeding
instituted for the purpose. *Partridge* v. *Hannum*, 2 Met. 569
*Wheelock* v. *Hastings*, 4 Met. 504. *Hanson* v. *Paige*, 3 Gray,
239. *Whithead* v. *Mallory*, 4 Gray, 180.

The reasons apply with equal force to a petition in the nature
of an appeal, for the purpose of testing the validity of the pro-
ceedings by which a warrant has issued against the estate of
the insolvent. Whatever may be the grounds of objection, and
by whomsoever presented, the question is but one — Is the de-
cree valid? If so, the legal consequences follow to the debtor
and creditors, for the decree cannot be void as to the one, and
valid as to the other.

As matter of practice, it would have been well that, after
filing the petition by Bass, public notice should have been given
to all persons interested. But this was not necessary. Notice
had been given of the issuing of the warrant and of the first
meeting of the creditors. Any creditors who, by reason of
attachments upon the estate or otherwise, had an interest ad-
verse to the proceedings, were fairly put upon their inquiry.
If they objected to the proceedings, the objection should have
been taken at an early stage of the case. If they found the
debtor had brought a bill to vacate the proceedings, they could
have made themselves parties to the bill, and have insisted upon
all possible objections. But they cannot try again the question
settled once, and finally, under the petition of the debtor.

*Petition dismissed.*