WILLIAM B. GIBSON, appellant.

Berkshire.   September 8, 1891. — September 21, 1891.

Present: ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Guardian of Minor — Notice of Appointment — Adoption of Illegitimate Child — Notice to Father.*

Publication of notice is not essential, under the Pub. Sts. c. 139, §§ 2, 3, to the validity of an appointment by the Probate Court of a guardian for a minor under fourteen years of age.

Notice to the father of an illegitimate minor of an application for its adoption is not required by the statutes of this Commonwealth; the written assent thereto of its guardian is sufficient.

APPEAL by William B. Gibson, administrator with the will annexed of the estate of Origen A. Gibson, from a decree of distribution made by the Probate Court upon the petition of a person alleging that she was the adopted daughter of the testator, by which the residue of the estate in the administrator's hands, amounting to $3,467.77, was ordered to be paid to her. The case was submitted to this court, and, after an order affirming the decree of the Probate Court, to the full court, upon agreed facts, in substance as follows.

The petitioner was an illegitimate child, and was born in Sheffield in March, 1859. On April 2, 1861, after the death of her mother, Albert Gardner was appointed her guardian without any notice of his application therefor. having been published. On July 17, 1861, the testator and his wife filed a petition in the Probate Court for leave to adopt the petitioner, to which her guardian assented in writing; and the petition was granted on. the same day, without any notice by publication or otherwise

to her or to her parents or relatives or next of kin, and without the consent to the petition of any other person than Gardner. The testator died on August 21, 1888, leaving no issue him surviving, and by his will gave the sum of one hundred dollars to his " adopted daughter," meaning the petitioner, and left the rest of his property to his wife, who died before him leaving no issue.   The natural father of the petitioner was said to be living in the county at the time of her adoption, but never married the petitioner's mother, or in any way contributed to the support of the mother or of the petitioner.   The petitioner contended that she was entitled to the entire estate of the testator, as his only heir at law.

*H. C. Joyner*, for the appellant.

*A. C. Collins*, for the petitioner.

BARKER, J.   If the petitioner to whom the decree awarded the personal estate of the testator was his legally adopted child, the decree was right.

The act of adoption was in 1861, upon a petition to the Probate Court by the testator and his wife, assented to in writing by one Gardner, as guardian of the petitioner, who was then four years of age, the decree of adoption having been made, without the service or publication of any notice, on the day of the presentation of the petition.   The child was illegitimate, and her mother, to whom her father was never married, was dead.   Her father is said to have been living in the same county, but never to have contributed to her support or to that of her mother. The agreed facts do not state that he was ever adjudged to be the father of the child, or that he ever acknowledged her as his child.   Gardner had been appointed by the Probate Court as her guardian, upon his own petition, and without any publication of notice, three months before the date of the adoption, but after the death of her mother.

The appellant contends that the appointment of the guardian was void for want of notice, and that the adoption was invalid because the consent of Gardner was thus of no effect, and because no notice of the proceedings was given to the father.

Without passing upon the question whether either the guardian's appointment or the adoption could be declared invalid in this proceeding, we are of opinion that Gardner was legally appointed, and that the adoption was valid.

1. By the Gen. Sts. c. 109, § 2, then in force, the Probate Court was empowered to nominate and appoint a guardian for any minor under the age of fourteen years. The statute did not in terms require any notice of the proceedings, or any nomination or consent on the part of the minor or of any person. We see no reason why, in such cases, notice should be held to be essential to the validity of the proceedings, and the history of the legislation on the subject, in connection with the decisions and practice, confirms this view. The judges of probate were empowered by the St. of 1783, c. 38, §§ 1, 2, to appoint guardians for minors and for insane persons. In neither case did the statute in terms require notice. The provisions regulating the appointment of guardians for minors have remained substantially the same. Rev. Sts. c. 79, §§ 2, 3. Gen. Sts. c. 109, §§ 2, 3. Pub. Sts. c. 139, §§ 2, 3. In practice it has never been considered essential that notice should be given in the case of a minor under the age of fourteen years. But in the case of insane persons this court held, in *Chase* v. *Hathaway*, 14 Mass. 222, 224, that, notwithstanding the silence of the statute, no decree made under it assigning a guardian for an idiot or lunatic could be valid unless the party to be affected had had an opportunity to be heard. This decision was placed upon the ground that, whenever the Legislature has provided that on account of crime or misfortune the public safety demands a suspension of the essential rights of the individual to the enjoyment of his liberty and property, " and has provided a judicial process, by which the fact shall be ascertained, it is to be understood as required that the tribunal, to which is committed the duty of inquiring and determining, shall give opportunity to the subject to be heard in support of his innocence or his capacity." But in the case of a minor of tender years, whose person is by the law presumed to be in the care and custody of parents or other guardians, and who has not the right of dealing with his own property, these considerations do not apply. When the statutes relating to guardians were revised by the Commissioners, under the resolve of February 4, 1832, the provisions relating to minors were left substantially unchanged, and did not in terms require notice. But a new section was reported, the substance of which was enacted in the Rev. Sts. c. 79, § 9, requiring notice to a person supposed to be

insane, of which the commissioners say, " This section is founded on the opinion of the court in *Chase* v. *Hathaway*, 14 Mass. 222." Commissioners' Report on the Revision of 1834, c. 79, § 10, and note. This requirement of notice in the case of insane persons has since remained; Gen. Sts. c. 109, § 8; Pub. Sts. c. 139, § 7; while, as we have seen, no similar provision has been inserted with respect to minors. We are of the opinion, therefore, that notice is not essential to the validity of such an appointment. Notice may of course be ordered by the Probate Court, if deemed advisable in any case, and a guardian *ad litem* might properly be appointed to represent the minor, if that court thought it best; but neither is essential to the validity of the appointment.

2. It follows that the written assent of Gardner as guardian was a sufficient consent to the petition for adoption, unless the child had a living parent in the sense of that word as used in the Gen. Sts. c. 110, §§ 1–10, then in force. We think that the word " parent " as there used has its legal signification, and is intended to designate only the lawful father or the mother. There is no reason why the Legislature should confer upon the father the right to notice in such cases. He has no right to the custody of the child, or to the use or control of its estate. He is at most a putative father in reputation only, but not in law. A bastard is in law *quasi nullius filius*, and therefore he is called *filius populi*, the child of the people : " *Cui pater est populus, pater est sibi nullus et omnis. Cui pater est populus, non habet ille patrem.*" Co. Lit. 123 a. The signification of the word " parent " in the St. of 1875, c. 99, has been discussed to some extent in the case of *McNeil* v. *Collinson*, 130 Mass. 167, 169, an action of tort given by the statute to a "parent or guardian." The action was brought by the mother as parent, and the absence of evidence that the boy had no father, and of evidence showing why such father did not or should not bring the suit, was insisted upon in defence. The court held that it could not know judicially that there was a father, or even that there ever was a legitimate father, and that it did not appear that the plaintiff was ever under coverture, thus implying that unless the child was legitimate the father would not be a parent in the sense of that statute.

We note that after the provisions of the General Statutes regu-

lating the adoption of children were repealed, and superseded by the St. of 1871, c. 310, this act was amended by a provision (St. 1872, c. 311, § 3) that nothing contained in it should be construed to require notice to the father of an illegitimate child, and also that when the subject of adoption was again dealt with, in the St. of 1876, c. 213, which is substantially re-enacted in the Pub. Sts. c. 148, the language was explicit in requiring the consent of the lawful parents, or, if the child was illegitimate, of the mother only. St. 1876, c. 213, § 2. Pub. Sts. c. 146, § 2. These provisions are, in our opinion, consistent with our construction. We think that the St. of 1872, c. 311, § 3, was intended merely to declare the law as it already existed; the subsequent enactments would of course follow the law so declared. In our opinion, notice to the father of a bastard of a petition for its adoption has never been required by our statutes.

The result is, that the petitioner was the legally adopted child of the testator, and that the decree of the Probate Court was right.                    *Decree of distribution affirmed.*