'' Daisy Dunbar· '', Petitioner, *v.* '' Lawrence Dunbar '', Respondent.*

Domestic Relations Court of the City of New York, Family Court, New York County, February 9, 1948.

*John P. McGrath, Corporation Counsel* (*Mathilda Miller* of counsel), for petitioner.

*Clarence W. Johnson* for respondent.

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York (L. 1933, ch. 582).

SICHER, J. Concededly, the parties duly intermarried on June 25, 1938, and the marriage relationship has never been terminated by judgment of divorce, separation, annulment or dissolution.

However, there is a sharp controversy as to the circumstances leading to institution of this support proceeding; respondent denying the paternity of the child ("Harold") born July 3, 1947, and asserting that there had been no marital relations between him and petitioner since before September 17, 1946.

There were two full hearings on January 21 and January 28, 1948.

A detailed narrative of the testimony of the parties and several witnesses would unduly lengthen and delay this opinion; suffice it to state that *all* the evidence (including demeanor) has been earnestly considered in arriving at today's decision.

Before September 1, 1947, respondent could not have been heard to assert nonaccess (see *Amato* v. *Amato,* 45 N. Y. S. 2d 371). But by virtue of an amendment of section 131 of the New York City Domestic Relations Court Act, effective September 1, 1947 (L. 1947, ch. 394), respondent was permitted fully and freely to testify that he had no sexual intercourse with petitioner since before September 17, 1946, although his testimony utterly failed to overcome the time-honored presumption that a child born to a married woman during coverture is the issue of her husband. Indeed, this proceeding illustrates the soundness of the purpose of that amendment, as thus described in the approving Bulletin No. 105 of the Association of the Bar of the City of New York, 1947 Committee on State Legislation: "The purpose is to provide that in proceedings to enforce the husband's obligation to support a child the Court may have all the facts before it and permit the husband or wife to testify to non-access where the parenthood of a child is in question without putting the burden on the parties to establish such fact by other evidence. The proposed amendment to the rule prohibiting a spouse from testifying to non-access is limited to proceedings in the Domestic Relations Court and the Children's Court."

To quote also from this court's March 20, 1947, memorandum to the Governor in support of the then proposed amendment:

"In the Family Court Division of the Domestic Relations Court of the City of New York the parties are more often than not unrepresented by counsel; and the facts are for the most part developed by questions put by the judge to each of the spouses. Is there any common sense reason why the judge should not be

allowed to listen to what a respondent may wish to say, under oath, in opposition to the demand of a wife from whom he has been estranged that he be required to support a child who may in truth not be his?

" Such testimony of the husband, standing alone, will of course be insufficient to overcome the strong presumption that a child born to an undivorced woman after marriage is her husband's. But it may furnish clues for further questions by the judge or investigation by the Probation Bureau, the calling of other witnesses, or an order for blood-grouping tests — safeguards which may not occur to a respondent unrepresented by counsel.

" Of course, denial of access is not conclusive; and the judge may well determine, and usually will, that as a matter of credibility and on the whole record there has not been overcome the strong presumption of legitimacy. But it is one thing to listen to and not accept the husband's version, and quite another thing to tell him that the law does not permit him to be heard."

In this proceeding the court was, therefore, not confronted merely with two diametrically opposed versions of the parties. Through the diligence of Assistant Corporation Counsel Mathilda Miller and Probation Officer Bella Swell, there were produced third party witnesses whose evidence strongly sustained petitioner's version, so that respondent's assertions of nonaccess were not only bare and uncorroborated but, on the contrary, discredited by affirmative evidence.

Likewise in the light of the frank admissions of the physician called to the stand by respondent, the alleged claim of inability to impregnate petitioner completely broke down. Even assuming that respondent's seminal fluid contained no motile spermatozoa on July 8, 1947, such fact would have little relevance to the crucial question of his ability to have impregnated petitioner in October, 1946 (see Sidney B. Schatkin's Disputed Paternity Proceedings [2nd ed.], pp. 360–369).

The blood-grouping tests accorded to respondent were not admissible in evidence because the results did not establish definite exclusion (N. Y. City Dom. Rel. Ct. Act, § 34).

Upon the whole record of conflicting evidence the court hereby finds that petitioner is entitled to support both for herself and the child under subdivision (1) and subdivision (6) of section 92 of the Domestic Relations Court Act, i.e., according to respondent's means and on a separate maintenance and not on a " public charge basis " only.

Moreover, regardless of any fault of either parent or any resources of the mother, the child " Harold " is entitled to support by the father in an amount measured by the child's needs in relation to the father's ability to provide and station in life and not merely at the low subsistence level of public relief budgets (see " *Johnston* " v. " *Johnston* ", 177 Misc. 618, 623; *Prindle* v. *Dearborn,* 161 Misc. 95, 99; *Schacht* v. *Schacht,* 187 Misc. 461; *Helman* v. *Helman,* 190 Misc. 991, 994).

The sole remaining question is the " fair and reasonable sum " which respondent may be required to contribute at this time under subdivisions (1) and (6) of section 92 and subdivision 1 of section 101 of the Domestic Relations Court Act.

Both parties have been substantial earners and accustomed to a comfortable, perhaps extravagant, scale of living. The separation stems in part from inability to budget co-operatively; as a consequence neither has now any reserves and each will experience difficulty and discomfort in readjusting to the inadequacies of an apportionment of the husband father's income among the broken family group.

At this time petitioner must devote herself to the care of the infant child, and they are lodging in the crowded home of petitioner's parents.

Respondent is employed by the Veterans' Administration on a five days week, at a gross annual compensation of $2,469.24; his take-home (net) pay is $88.62, biweekly. In addition, he has from time to time over the years supplemented such fixed compensation with week-end taxicab earnings.

For the foregoing reasons the court finds that respondent is chargeable with support of petitioner wife and the child named in the petition according to respondent's means and on a separate maintenance basis; and he is, therefore, hereby ordered and directed to pay to this court for their support the sum of $30, biweekly, each and every alternate Wednesday, beginning with a deposit in that amount on February 18, 1948, until further order of the court.

Notice shall be given to the parties and attorneys pursuant to the subjoined direction.