" ANITA PANZO ", on Behalf of " ALFREDO PANZO, III ", Petitioner, *v.* " ALFREDO PANZO, SR.", Respondent.*

Domestic Relations Court of the City of New York, Family Court, New York County, July 8, 1948.

---

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the New York City Domestic Relations Court Act.

*John P. McGrath, Corporation Counsel* (*Mathilda Miller* of counsel), for petitioner and another.

*Ralph Bosch* for respondent.

SICHER, J.  In this proceeding, instituted nominally on behalf of an infant grandchild, the real party in interest is the department of welfare of the city of New York, seeking exoneration from the cost of maintaining the infant grandchild of respondent.

The infant's father is the son of respondent.

As hereinafter more fully related, he disappeared from New York City shortly after entry of an order of this court against him for support of his then pregnant wife (" *Anita Panzo* ", Petitioner, v. *"Alfredo Panzo, Jr."*, Respondent, Docket No. 2018/1947); there is now outstanding a warrant for his arrest issued in that proceeding on April 7, 1948, upon his violation of that order; and such warrant has not been executed because he is allegedly now in South America and the process of this court does not reach beyond the boundaries of the State of New York.

This grandparent proceeding has therefore been instituted under appropriate provisions of the Domestic Relations Court Act of the City of New York upon the paternal grandfather's refusal, allegedly on the ground of financial inability, to relieve the City of New York of the burden of supporting the petitioner infant who is the issue of respondent's son and abandoned by such son.

Respondent's counsel's brief states: "Upon the trial held on the 19th day of May, 1948, it was stipulated that there was no issue as to the legitimacy of the said child, nor as to the residence of the petitioner or the infant. The issue was narrowed down to and evidence taken on the ability of the respondent as grandfather to pay maintenance and support of the infant child."

However, respondent's counsel confuses the wholly irrelevant article VIII of the *Domestic Relations Law* (dealing with *filiation* proceedings *outside of the city of New York* in respect of *children born out of wedlock*) with the entirely distinct statute known as " *Domestic Relations Court Act of the City of New York* " (hereinafter, for convenience, referred to as "Domestic Relations Court Act "), which confers upon the Family Court Division of this court exclusive jurisdiction *within the city of New York* to order support of a *legitimate* child by its parent or grandparent.

For the guidance of respondent's counsel and so that he and his client may be fully apprised as to the relevant law and the serious consequences which may follow respondent's failure to comply with the order entered simultaneously with the filing of this opinion, there will be detailed pertinent provisions of the governing statute and certain underlying salient facts.

The petitioner grandchild was born in New York City on February 9, 1948, resides there with his mother (" Anita Panzo "), and is being cared for by her at a present cost of

$61.75 each month to the department of welfare of the city of New York, a low subsistence public relief budget standard which takes into account, and supplements, a remittance of $26 each month from the father of said " Anita Panzo " (i.e., the maternal grandfather) who resides in Porto Rico and is now therefore not within the jurisdiction of this court.

On December 9, 1947, said " Anita Panzo " filed in this court a petition against " Alfredo Panzo, Jr." praying for an order of support as wife and for the expenses of her nearing confinement, pursuant to subdivisions (1), (2), and (3) of section 92 and subdivision 1 of section 101 of the Domestic Relations Court Act.

On December 10, 1947, said " Anita Panzo ", said " Alfredo Panzo, Jr.", and the latter's father, " Alfredo Panzo, Sr." (respondent herein), attended before me at the New York County Family Court, Part I; said " Alfredo Panzo, Jr." and his father being then represented by an attorney (other than the respondent's attorney of record in this proceeding) and petitioner wife and the department of welfare of the city of New York by Assistant Corporation Counsel Mathilda Miller. Thereupon, in accordance with arrangements which had been worked out in conference among the parties and those attorneys I entered on that date a formal order against " Alfredo Panzo, Jr.", directing him to pay into this court the weekly sum of $12.50, each and every week beginning December 17, 1947, for the support of the wife until further order of the court, and by December 17, 1947, the additional sum of $115 toward the expense of the confinement. Simultaneously with the entry of that order I indorsed upon the petition: " Petitioner and respondent. Attorney for respondent. Assistant Corporation Counsel Miller for petitioner. Respondent's father (' Alfredo Panzo, Sr.'). On consent (1) petitioner is entitled to support on a means basis (i.e. under Dom. Rel. Ct. Act, Sec. 92, subd. 1); (2) petitioner is in seventh month of pregnancy; (3) parties were duly married on 11/19/47 at New York City; (4) Order, $12.50 a week, beginning 12/17/47, for petitioner; in addition, respondent to deposit by noon of December 17, 1947, the sum of $115, to be remitted to X Hospital, N. Y. C., for balance of petitioner's confinement hospitalization (exclusive of medical services); (5) respondent and his father will discharge the cost of the medical services for her confinement to be rendered by Dr. Y or any other physician who is acceptable to petitioner; (6) respondent's father will file written guaranty immediately to assure the foregoing payments through this Court up to and including June 17, 1948 and also the confinement expenses above described.

In the event of failure to make direct arrangements for such medical services, the order may be amended *nunc pro tunc* as of today to include such cost under Dom. Rel. Ct. Act, § 92, subd. 2. Basis is potential earning capacity, which is at this time limited by a psycho-neurotic condition. Petitioner referred to Home Relief for supplemental aid. After the birth of the child, case may be rescheduled to consider whether order should not be amended accordingly.''

Before leaving the courthouse said '' Alfredo Panzo, Sr.'', the father, executed a written guarantee of payment of all the foregoing sums.

That guarantee was given and accepted in lieu of the court's requiring the posting of a cash bond pursuant to sections 139 and 151 of the Domestic Relations Court Act. Except for such guarantee and '' Alfredo Panzo, Sr.'s '' representation of himself and his outward appearance as a man of substance, the court would have exacted a bond as security for the performance of the afore-described support order by the unstable '' Alfredo Panzo, Jr.'' However, I must regretfully say, ensuing events compel the conclusion that such guarantee was an insincere device to afford '' Alfredo Panzo, Sr.'' time to remove his son beyond the jurisdiction of this court.

Following a complete disregard of that order, on January 30, 1948, the pregnant wife and her husband's father (respondent herein) attended before me, the respondent being accompanied by the same attorney as now represents him in this grandparent proceeding. Respondent evinced a cold lack of concern for the plight of the expectant mother, then wholly dependent on home relief assistance and Catholic Charities' guidance in consequence of the complete violation of the aforesaid December 10, 1947, support order against the husband and of respondent '' Alfredo Panzo, Sr.'s '' guarantee thereof. Respondent attempted to explain his having induced the court to accept such barren guarantee by pleading that he had executed it with the mental reservation of his expectation of procuring the necessary money from the young wife's father in Porto Rico and that he, '' Alfredo Panzo, Sr.'' himself, had no funds because of an embargo on remittances from his home country. It was only after an intimation that a transcript of the minutes of the entire proceeding might be sent to the United States Immigration Service for its information concerning the respondent (in this country on a temporary visa) that respondent took steps to perform his written guarantee to the extent of assuring the expectant mother the contemplated medical and hospital confinement attention.

Respondent's demeanor and attitude in this grandfather proceeding follow the same pattern of smooth evasiveness.

The law does not cast upon a father-in-law any duty to support a son's wife; the sole remedy of the department of welfare of the city of New York for reimbursement of its maintenance of the young wife occasioned by violation of the aforesaid $12 a week support order for herself is a Municipal Court action against respondent "Alfredo Panzo, Sr." on said guarantee. However, the Legislature *has* imposed upon the respondent grandfather the duty to support his indigent grandchild and has empowered this court to enforce such obligation by appropriate support order and bond security.

Subdivision 3 of section 101 of the Domestic Relations Court Act provides: "Where the father of a child included in a petition for support is dead, or where the court, in its judgment, is unable to secure adequate support for such child from its parents, and the child's grandparents are of sufficient means to support it, said grandparents are hereby declared to be chargeable with the support of such grandchild and may be required to pay a fair and reasonable sum according to their means, as may be determined by the court."

"Where the parents of a child are unable to adequately provide for it, a grandparent of sufficient means may be held liable for the support of the grandchild. (Domestic Relations Court Act of the City of New York, § 101, subd. 3; § 92, subd. 3. See, also, Public Welfare Law, § 125; Code Crim. Proc. § 914; *Rowley* v. *Fuller,* 251 App. Div. 793; affd., 276 N. Y. 519.)" (*Matter of Calhoun* v. *Calhoun,* 256 App. Div. 672 [1st Dept., 1939].)

The following are other pertinent provisions of Domestic Relations Court Act of the City of New York:

"§ 92. *Powers.* In the exercise of its jurisdiction the court shall have power * * * (3) To require of persons legally chargeable with the support of a * * * child * * * and who are possessed of sufficient means or who are able to earn such means, the payment weekly, or at other fixed periods, of a fair and reasonable sum for such support, or as a contribution towards such support, according to the means of the persons so chargeable; provided, however, that the amount that the court may require a respondent to pay for the support of the petitioner shall not exceed fifty dollars a week."

"§ 102. *Punishment for failure to support.* A person chargeable with the support of another as provided in section one hundred and one who fails to provide such support is guilty of non-support and may be punished by imprisonment in jail for not exceeding twelve months."

"§ 103. *Residential jurisdiction.* * * * 2. A grandparent of a child under the age of seventeen years may be required to furnish support or may be found guilty of non-support, as provided in the two preceding sections, if,

" (a) such grandparent is residing or domiciled in the city at the time of the filing of the petition for support; or

" (b) if the grandparent is not residing or domiciled in the city but is found therein, provided that the grandchild is so residing or domiciled at the time of the filing of the petition for support and is so residing or domiciled at the time of the issuance of the summons or warrant."

"§ 111. *Petition.* Notwithstanding the provisions of any other law, a * * * child * * * may file with the court a petition that the court order the persons legally chargeable with their support to support said petitioner as required by law. Such petition shall be under oath and may be made on information and belief and may be filed on behalf of such * * * child * * * by the parent * * * or by any public official having a duty or responsibility relative thereto * * *. It shall not be necessary as a condition precedent to the filing of a petition for the petitioner to make a demand upon the respondent for support."

"§ 29. *Support bureau.* * * * 2. Any and all moneys paid into the support bureau of a family court division of the domestic relations court of the city of New York for the support of a * * * child * * * shall upon payment into such support bureau be deemed for all purposes to be the property of the * * * child * * * for whom such money is to be paid; except that where a petition is signed and a proceeding is instituted to obtain support for a child, * * * all money or moneys paid pursuant to order entered in such proceeding may be collected by the petitioner in such proceeding who shall be accountable to the person for whose benefit the proceeding is brought for the proper use of such moneys."

"§ 131. *Presumptions.* * * * a respondent shall, prima facie, be presumed to have sufficient means to support his * * * grandchild * * *."

"§ 139. *Bond for support* * * *. If a bond for support be required of the respondent * * * the condition of the undertaking shall be for his future compliance with the court's order for support, * * * or in default thereof that the surety will pay to the clerk of the court a specified sum as therein set forth. Instead of entering into such an undertaking a respondent may deposit money in an amount to be fixed by the court."

"§ 151. *Undertaking for support.* The court may require the respondent to give to the clerk a written undertaking with sufficient surety approved by the court that the respondent will abide by the order for support. Such undertaking shall be for a definite period, not to exceed three years, and the required amount of the principal of such undertaking shall not exceed the total payments for support required for three years and shall be stated in the order for support. The respondent may deposit such sum in cash with the clerk. The court may in its discretion require either such written undertaking with sufficient surety approved by the court or may require that cash be posted to secure compliance by the respondent with the order for support for such period. In the event that the respondent shall fail to make any payment, when due, within such period, payment shall be made to the petitioner out of such cash."

It is indisputable, and virtually conceded, that the particular facts bring this infant grandchild within the above-quoted provisions of subdivision 3 of section 101, subdivision (3) of section 92, and subdivision 2 of section 103. For, the father has fled the jurisdiction and the mother is herself dependent upon public assistance at this time because she must give all her time to the care of the infant grandchild. Because of the complete lack of placement facilities for a child of such tender age and the recognized disadvantages of deprivation of maternal care during infancy, this mother must devote herself exclusively to the care of petitioner and is therefore classified by the department of welfare of the city of New York as otherwise unemployable.

Of course, the liability of a grandparent is secondary only and wholly statutory. The primary obligation is that of the parents; and, when, if, and as the child's father reappears on the scene and assumes such primary duty, the respondent grandfather would be relieved. But here the grandfather actively assisted the father in fleeing the jurisdiction of this court and leaving the infant wholly dependent upon public aid.

True, the support duty is apportionable among *all* the grandparents who can be brought before the court (see N. Y. City Dom. Rel. Ct. Act, § 101, subd. 3; *Dooley* v. *Dooley,* 174 Misc. 10). But because the maternal grandparents reside in Porto Rico and, unlike the paternal grandfather, are not physically present in the city of New York there is lacking as to them the requisite residential jurisdiction (N. Y. City Dom. Rel. Ct. Act, § 103, subd. 2). Today's order must therefore necessarily be directed wholly against the paternal grandfather, subject, however, to his right to ask that the maternal grandparents be

brought in when and if it is shown that they can be served with this court's process within the city of New York.

The only remaining questions are the amount and terms of today's order and respondent's ability to pay.

It is well-established law that a child is entitled to receive from its parent support in accordance with the latter's ability to provide and station in life and not merely at the low subsistence level of public relief budgets. (See " *Johnston* " v. " *Johnston* ", 177 Misc. 618, 623; *Prindle* v. *Dearborn,* 161 Misc. 95, 99; *Schacht* v. *Schacht,* 187 Misc. 461; *Helman* v. *Helman,* 190 Misc. 991, 994; " *Dunbar* " v. " *Dunbar* ", 191 Misc. 236, 239.) That same measure is applicable to a grandchild, in my opinion and as previously held by colleagues (*Dooley* v. *Dooley,* 174 Misc. 10, ✦ *supra,* PANKEN, J.; *Caplan* v. *Caplan,* 177 Misc. 847, 851, in which the late Justice SIEGEL stated: " This court holds that the language of subdivision 3 of section 101 means the support should be, if granted, on a means basis, not on a public charge basis.") The grandson of a man who came to New York City in 1942 as an attache of a South American Government Consulate, served until two and a half years ago as its comptroller and auditor at a salary of $300 a month, and has continuously lived at the Z Hotel in a room costing him $30 a week, should not be relegated to rearing at the level of a public relief budget.

However, at the present juncture the difference between a " means " and a " public charge " basis is largely academic, inasmuch as today's order is designed primarily to exonerate the City of New York from the cost of supporting respondent's grandchild and is for an amount scarcely more than enough to take the grandchild off the public relief rolls. But conceivably this distinction might later become material in the light of the infant's greater needs as the months go by and respondent's then proved actual earnings.

A qualified representative of the department of welfare of the city of New York testified that the current home relief budget for the mother and child is $87.75 a month, and that $51.69 thereof is allocable to the child's needs; also, that the cash expenditures of the department of welfare of the city of New York since the child's birth have been $61.75 a month, after deducting from the $87.75 budget figure voluntary remittances of $26 a month from the maternal grandfather in Porto Rico.

Inasmuch as the mother, if not burdened with the care of respondent's grandchild, would be able to support herself but is now also a public charge because she must give all her time to furnishing the infant the supervision which would otherwise

entail the additional cost of a paid nurse, if available, the respondent grandfather is hereby held chargeable with at least that sum of $61.75 a month. And today's order for the period after the grandchild will have been taken off public relief rolls in consequence of such order will be in a slightly fuller figure both because of the greater needs of the infant as he grows older and also the cost of the medical care which is provided by the department of welfare of the city of New York to home relief recipients in addition to the cash contributions.

On the whole record, including respondent's demeanor, the court finds that respondent presently is able, and should be required, to contribute the sum of $65 a month.

Even assuming the truth of respondent's *disbelieved* testimony that for his own comfortable scale of living he is wholly dependent on the bounty of a well-to-do second wife, there would be apposite the analogous doctrine of a judgment debtor proceeding that " contributions, though in the nature of gratuities donated by relatives, *when and as received by the debtors,* constitute income as defined by " section 793 of the Civil Practice Act (*Bergman* v. *Buechler,* 249 App. Div., 553, 555; cf. *Lewshap Realty Co.* v. *Schubert,* 182 Misc. 343).

Respondent's manner on the stand and his prior deception of this court in the support proceeding against his son were such that his testimony as to his lack of personal income is not believed. Accordingly, apart from the possible relevance of the aforesaid cognate judgment debtor doctrine, there are here applicable in any event the statutory presumption of respondent's ability to support his grandchild (N. Y. City Dom. Rel. Ct. Act, § 131), which has not been overcome by credible evidence, and also the statutory power to predicate a support order on *potential* earning capacity (N. Y. City Dom. Rel. Ct. Act, § 92, subd. [3]).

Respondent admitted earning $300 a month as an auditor from 1942 until at least some time in 1946; concededly, in 1947 he invested $10,000 in a manufacturing venture, which he claims to have lost; concededly, also he has bought merchandise as agent and has had business relations with a brother-in-law in South America; and he still maintains an active account in a New York City bank. A transcript of that account, for the period from May 1, 1945, to May 31, 1948, consists of fifteen sheets and has been procured and is deemed in evidence pursuant to stipulation of counsel.

Such account was very active from May 1, 1945, until April 1, 1948; it had a May 1, 1945, balance of $18,296.78; the deposits

from May 1 to December 31, 1945, aggregated $43,059.39; the deposits during 1946 aggregated $32,484.34; the deposits during 1947 aggregated $26,462.65; and from February 1 to March 31, 1948, $1,850; as recently as March 5, 1948, the balance was $1,286.43, although drawn down to a negligible residue after commencement of this grandfather proceeding.

For the foregoing reasons the court hereby finds that respondent is chargeable with support as alleged in the petition, and he is therefore hereby ordered and directed to pay into this court the monthly sum of $65, beginning July 22, 1948, each and every month, for support of the grandchild (" Alfredo Panzo, III ") named in the petition; and the support bureau is hereby directed to remit each such deposit to the mother, " Anita Janzo ", in behalf of the petitioner grandchild (pursuant to N. Y. City Dom. Rel. Ct. Act, §§ 111, 29, subd. 2).

*In addition*, to reimburse the department of welfare of the city of New York for its expenditures at the rate of $61.75 a month for the period of three months from April 22, 1948 (the date of the filing of the petition herein), until July 22, 1948 (the date of the first installment under this order and therefore the date as of which the infant grandchild should cease to be a public charge), respondent is further directed to pay into this court the aggregate sum of $185.25, in five equal monthly installments of $37.05 each, beginning August 22, 1948; and each such additional deposit the support bureau is hereby directed to remit to the department of welfare of the city of New York, as and when deposited, as reimbursement (see Family Court Rule XIV, subd. b, Bender's Court Rules [1st ed.], p. 368, which provides: " In a proceeding in which no temporary order shall have been entered, the Court, in its discretion, may direct that the final order operate *nunc pro tunc* as at the date of the filing of the petition ·* * *.")

In the light of respondent's breach of his written guarantee of the performance of the order against his son and respondent's assisting that son to flee the jurisdiction, and because respondent himself might likewise depart from the State of New York, the court is constrained to exercise the discretionary power conferred by sections 139 and 151 *et seq.* of the Domestic Relations Court Act.

Accordingly, to assure prompt payment of the installments due under today's order up to and including June 22, 1949, respondent is hereby ordered to post, by 10 A.M. on August 4, 1948, a cash bond in the sum of $965.25 or in default of furnishing such surety to stand committed to the warden or keeper

of the city prison or jail, or workhouse of the city of New York for a period of three months from date of commitment or pending further order of the court (see N. Y. City Dom. Rel. Ct. Act, § 92, subd. [11]; §§ 151, 154; *Monroe* v. *Monroe*, 45 N. Y. S. 2d 589; also Family Court Rule XXXVI, Bender's Court Rules [1st ed.], p. 374). Such deposit shall stand as security for all payments accruing under today's order to and including June 22, 1949.

Notice shall be given to the parties pursuant to the subjoined direction.