"Estella Rotina", on Behalf of "Lola Rotina" and Another, Petitioner, v. "Maria Rotina" et al., Respondents.*

Domestic Relations Court of the City of New York, Family Court, New York County, August 31, 1953.

---

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the New York City Domestic Relations Court Act (L. 1933, ch. 482, as amd.).

[redacted]

*Denis M. Hurley, Corporation Counsel (Mathilda Miller* of counsel), for petitioner and Department of Welfare of City of New York.

*Cornelius McDougald* for " Maria Rotina ", respondent.

SICHER, J. Subdivision 3 of section 101 of the New York City Domestic Relations Court Act provides: " Where the father of a child included in a petition for support is dead, or where the court, in its judgment, is unable to secure adequate support for such child from its parents, and the child's grandparents are of sufficient means to support it said grandparents are hereby declared to be chargeable with the support of such grandchild and may be required to pay a fair and reasonable sum according to their means, as may be determined by the court."

That chargeability of grandparents for support is unknown to the common law. It is a wholly statutory obligation, and arises only when both the father and the mother are unable or fail to furnish adequate support for their child; also, it is apportionable among all the grandparents within the residential jurisdiction of the court (see " *Panzo* " v. " *Panzo* ", 192 Misc. 989, 996-997) and may be only in a " fair and reasonable sum " according to the means of each grandparent.

Contrastedly and properly, the support obligation of a parent, primarily of the father and secondarily of the mother, is much

greater. It is an established common-law duty, so that the provisions of the Domestic Relations Court Act for its enforcement are merely declaratory and include the potential, as well as current actual, ability of a father or a mother. Thus, subdivisions 1 and 2 of section 101 of the Domestic Relations Court Act expressly declare that the father, in the first instance, or the mother, in the second instance, may be placed under an order for support of a child " if possessed of sufficient means *or able to earn such means* " (emphasis supplied). Significantly, the words just italicized are not included in the definition of the statutory support obligation of a grandparent (N. Y. City Dom. Rel. Ct. Act, § 101, subd. 3), nor, analogously, of a wife for the support of an indigent husband who is or is likely to become a public charge (N. Y. City Dom. Rel. Ct. Act, § 101, subd. 1, as amd. by L. 1950, ch. 786, § 3). (See " *Posner* " v. " *Posner* ", 201 Misc. 432.)

" Estella " and " Carlos Rotina " are the mother and father of two children, " Lola " (born August 9, 1947) and " Anna " (born August 4, 1948), who are now recipients of supplemental assistance from department of welfare of the city of New York, because the father has been contributing toward their support an inadequate amount, namely, only $12 a week, and the mother has no earnings (remaining at home to care for those tender age children).

Because of the inadequacy of the father's contribution — an amount fixed by this court in a prior proceeding, department of welfare of the city of New York has required the mother to institute the instant proceeding against the paternal grandmother, " Maria Rotina " (respondent No. 1), the alleged maternal grandfather, " Emilo Cantino " (respondent No. 2), and the alleged maternal grandmother, " Anita Alfredo " (respondent No. 3).

On July 29, 1953, petitioner-mother and the maternal grandmother (respondent No. 3) and a representative of department of welfare of the city of New York attended before Justice WILSON, who marked the proceeding " Reserved Generally " against respondents 2 and 3 but issued a summons for the paternal grandmother (respondent No. 1), returnable August 13, 1953. For, it appeared not only that the parents of the mother (" Estella Rotina ") had never intermarried and therefore were not in law " grandparents " of " Estella's " children (see *Anonymous* v. *Anonymous*, 174 Misc. 906) but also that " Emilo Cantino " (the putative father of " Estella ") earned only $45.75 a week and was under a Court of Special Sessions'

order to pay to department of welfare $8 a week toward the support of his minor out-of-wedlock children and that "Anita Alfredo" had four young children by her husband in addition to the out-of-wedlock children by "Emilo Cantino" and she was without any earnings or other means.

On August 13, 1953, I indorsed on the petition: "Petitioner and respondent. Assistant Corporation Counsel Miller for petitioner and Department of Welfare. Attorney for respondent No. 1. Probation Officer Solakian. Also father of the children ('Carlos Rotina') who is under an order of $12 a week. Interpreter. Department of Welfare is supplementing the maintenance of the two grandchildren named in the petition. Sole issue is whether respondent No. 1 has sufficient ability at this time to contribute toward the public charge support of those grandchildren. She testified that her husband was lost in Merchant Marine service in 1942; that she received in 1943 a $5,000 death award from the United States Government and also collects since December 15, 1949 a widow's pension of $67.50 per month; that she has not worked since April 1953 because of illness but is wholly dependent on a savings bank account of about $1,400 (residue of that $5,000 award) and about $1,300 postal savings accumulated out of her earnings. Stipulated that respondent's attorney will furnish photostats or exhibit originals of the two savings account books and consent to Court's procuring report from Mt. Sinai Hospital as to respondent No. 1's condition. She is sixty-one years old. Decision reserved."

Respondent No. 1's counsel expressly waived the retaking of the evidence concerning respondents 2 and 3 and also accepted as binding on his client the prior adjudication of the father's inability to contribute more than $12 a week. However, he asked that the proceeding be dismissed against respondent No. 1 or marked "Reserved Generally", on the ground that she lacks sufficient means to justify an order against her. He contended tentatively that the residue of the death award to the widow might be exempt. However, he has since frankly communicated that, although section 25 of the Federal Employees' Compensation Act (U. S. Code, tit. 5, § 775) exempts funds paid thereunder from claims of creditors, it does not touch the jurisdiction of this court to make an order for support of a dependent of the death award beneficiary. But, he still contends — soundly, it seems to me — that the paternal grandmother's age, widowhood, impaired health, and limited savings con-

strain denial of the department of welfare of the city of New York's request for an order against her at this time.

Out of that $5,000 United States Government death award received in 1943, she has a residue of only $1,435.68, having drawn upon it for the living expenses of herself and her minor children while still dependent upon her. Her only other present resources are postal savings certificates in the aggregate of $1,490 and the afore-mentioned monthly pension. Until April, 1953, she had earned about $10 a week as a domestic but then ceased work because of hypertension and rheumatism, and she is now wholly dependent on those savings and pension.

In *City of New York* v. *Sullivan* (246 App. Div. 55, 56-57) the Appellate Division, First Department, reversed a support order for a wife predicated solely on a $5,000 cash legacy and ruled that the Family Court " in making an award should take into consideration not only the fact that the appellant is about to receive a legacy but should consider, in addition thereto, his advanced years, and the amount of money he may need for his support when he is no longer able to receive anything for his labors."

That ruling, concerning a husband's support obligation, applies with added force to a sixty-one year-old widowed grandmother, whose chargeability, unlike a husband's or a father's, is statutory only and, being in derogation of the common law, should be strictly construed.

For the foregoing reasons this proceeding is hereby marked " Reserved Generally " also against respondent No. 1, without prejudice, however, to the right of petitioner or department of welfare of the city of New York to reopen it when and if there develop pertinent future facts.

It should be added, for completeness and in fairness to department of welfare of the city of New York, that the instant proceeding was fully justified because respondent No. 1 had declined to answer the inquiries of the department of welfare social investigators concerning her son " Carlos' " whereabouts and her own resources and that he was located after several years and placed under a court order in the prior proceeding against him only after the threat of this proceeding against her. Thus, this appears to be a case, of a type unfortunately familiar, in which the father disappears and the paternal grandparent colludes with him out of hostility or indifference toward the daughter-in-law, grandchildren, and the public relief authorities.

Notice shall be given pursuant to the subjoined direction.