STATE BOARD OF CHILD WELFARE, PLAINTIFF, v.
P. G. F., DEFENDANT.

Juvenile and Domestic Relations Court
Essex County

Decided September 29, 1959.

*Mr Eugene T. Urbaniak,* Deputy Attorney General, argued the cause for plaintiff (*Mr. David D. Furman,* Attorney General, attorney).

*Mrs. Janet W. Freeman* argued the cause for defendant (*Mr. Fred Freeman,* attorney; *Mr. Martin L. Duyk,* on the brief).

BELLFATTO, J. J. D. R. C. The question presented is whether under *R. S.* 44:1–140 a person may be compelled to support the illegitimate child of his illegitimate daughter. *R. S.* 44:1–140 is *L.* 1924, *c.* 132, *sec.* 74, which is "An Act for the settlement and relief of the poor," *etc.* The section in question provides that:

"The father, grandfather, mother, grandmother, children, grandchildren, and husband or wife, severally and respectively, of a poor, old, blind, lame or impotent person or other poor person or child

not able to work, shall, if of sufficient ability, at his or their charge and expense, relieve and maintain the poor person or child in such manner as the overseer of the poor shall order, or the court upon its own initiative or the information of any person, after notice to the person or persons chargeable and hearing the overseer, may so order.

The provisions of this section shall apply to the minor children of a mother whose husband shall fail properly to support and maintain such children when by reason thereof they are likely to become a public charge upon the municipality in which they have gained a legal settlement."

*Section* 1 of the act consists of a number of definitions of the words used in the act. However, the words "father, grandfather, mother, grandmother, children, grandchildren, * * * poor person or child" or any similar words used in *sec.* 74 as noted above have not been defined.

■ Unquestionably under the common law neither the "father" nor the so-called grandfather were under any obligation to support an illegitimate child, and there is no such obligation today except where the common law has been expressly changed by statute. See *Borawick v. Barba,* 7 *N. J.* 393 (1951); *Hall v. Centolanza,* 28 *N. J. Super.* 391, 394 (*App. Div.* 1953).

■ With respect to the position of the putative father, the common law has been clearly modified. *N. J. S. A.* 9:16–1 provides that the mother of an illegitimate child shall have the exclusive right to custody and control of the child, and that the putative father shall have no such rights. *R. S.* 9:16–2 provides that such a child shall be entitled to support and education from its father and mother to the same extent as if born in lawful wedlock. Thus, we see that without establishing a complete legal relation of father and child between the putative father and the child, the Legislature has expressly imposed upon the father the duty to support the child.

■ Does *R. S.* 44:1–140, quoted above, further abrogate the common law and impose upon a person the duty to support the illegitimate child of his illegitimate daughter? Does the use of the word "grandfather" in the act indicate

the creation of such new obligation, theretofore nonexisting? Clearly, *R. S.* 44:1–140 is a general act for the relief of the poor, and is not directed to the particular or specific problem of relations or duties as between illegitimate children and their ancestors. There is nothing in the act to indicate that the Legislature gave new meaning to the word "grandfather," or that it intended to alter previously recognized relations. Accepting and designating relations as they previously existed, the Legislature imposed certain duties on persons coming within those relations.

The State contends that taking the word "grandfather" as used in the act, in its common or accepted meaning, it would include the defendant. For such a conclusion, the State relies on *R. S.* 1:1–1 and *N. J. S. A.* 30:4C–2(*b*).

*R. S.* 1:1–1 pertains to statutory constructions. It provides the general principles for the construction of the *Revised Statutes,* and demands that words and phrases used in the statutes be given their "generally accepted meaning" according to the "approved usage" of the language and that words and phrases having a special or accepted meaning in the law shall be construed in accordance with "such accepted meaning."

This rule of construction does not support the State's construction of the word "grandfather" as used in *R. S.* 44:1–140, for while a popular or generally accepted meaning of the word "grandfather," loosely used, may include a person who is the father of an illegitimate daughter who in turn is the mother of an illegitimate child, that certainly is not the "approved usage of the language" or its "accepted meaning." The judicially approved usage and the judicially accepted meaning of the word point to the contrary. In *Rotina v. Rotina,* 204 *Misc.* 291, 124 *N. Y. S. 2d* 66, 68 (*Dom. Rel. Ct.* 1953), it is held that persons who have never intermarried are not the grandparents of an issue born to their out-of-wedlock child within the meaning of the word "grandparents" as used in a statute imposing obligations upon such grandparents for the support of their grand-

children. To the same effect, see *Anonymous v. Anonymous*, 174 *Misc.* 906, 22 *N. Y. S.* 2d 598 (*Dom. Rel. Ct.* 1940). That the accepted meaning or the approved usage of the word "grandfather" would not include a person in the position of the defendant in the present case is made clear by the decision of our former Supreme Court in *Splitdorf Electrical Company v. King*, 90 *N. J. L.* 421 (*Sup. Ct.* 1917). That case involved the question whether under the Workmen's Compensation Act the illegitimate child of the daughter of an injured workman was a dependent of such daughter's father. Under the act under discussion in *Splitdorf v. King, supra,* the word "dependent" was defined to include "grandchildren, posthumous children (and) *illegitimate children."* [Emphasis added] Despite this express inclusion of *illegitimate children,* the Supreme Court held that the illegitimate child of the legitimate daughter of the injured workman was not a grandchild under the statute. The lower court had held that such a child was a grandchild. Reversing, the Supreme Court said at *page 422*:

"We are of opinion that this was erroneous, for at common law a bastard was *nullius filius,* and if not a child of anyone could not be a grandchild. Our statute permitting inheritance between a mother and her illegitimate child does not establish any relationship between such child and the parents of its mother, nor can such child inherit from the mother's ancestors, for, except as changed by the statute, the common law prevails.

\*    \*    \*    \*    \*    \*    \*    \*

In the absence of anything to the contrary we must conclude that when the Legislature made use of the descriptive term 'grandchildren,' it used it in its ordinary sense and as applicable only to persons who stood legally in that relation to the decedent workman, and not as intending to alter the common-law rule by making one who could not stand in such relation a grandchild. The Legislature had in mind the question of illegitimacy, for it provided for the illegitimate children of the decedent, but went no further, and we are now asked to supply what it omitted by construing the law to include among grandchildren those who have no such legal status."

■ Applying the reasoning of *Splitdorf v. King, supra,* it would follow that when the Legislature used the word

"grandfather" in *R. S.* 44:1–140 it used it in its ordinary sense as applicable only to a person who stood legally in that relation to the person to whose support he is to contribute, and did not intend to alter the common-law rule. Thus, it must be concluded that absent any other indication of legislative intent, and applying to *R. S.* 44:1–140 the general rules of construction, the word "grandfather" would not include the defendant.

The State contends, however, that further legislative intent imposing the burden contended for by the State appears in *N. J. S. A.* 30:4C–2(*b*), which provides that:

"The word 'child' includes stepchild and illegitimate child, and further means any person under the age of twenty-one years."

A study of the act mentioned, 30:4C–1 *etc.*, does not indicate any legislative intent to burden a so-called grandfather of an illegitimate child with the burden of supporting that child. The act does not attempt to alter the relations between a child and its ancestors. The act in question (*L.* 1951, *c.* 138, *page* 593) consists of 40 sections, which are now designated as *N. J. S. A.* 30:4C–1 to 40, inclusive. The express purpose of the act is to provide welfare service for all dependent and neglected or needy children and to provide home life for them. This burden of providing welfare service for such neglected or needy children is assumed by the State itself, and quite naturally in doing this it would not have been appropriate for the State to discriminate between legitimate and illegitimate children. This is quite different, however, from concluding that the State thereby intended to impose upon a person not theretofore obligated under the common law the duty to support a child not legally his grandchild.

If, according to the common law, a bastard is in law *quasi nullius filius*, and therefore *filius populi*, *i.e.*, the child of the people (*Appeal of Gibson*, 154 *Mass.* 378, 28 *N. E.* 296 (*Sup. Jud. Ct.* 1891)) the fact that the State has undertaken under *R. S.* 30:4–1 *etc.* to provide welfare service to

illegitimate children on a par with that provided for other needy children does not indicate an intent to create a legal relation or status of grandfather and grandchild between an illegitimate child and the putative father of its mother.

Nor is the State's position supported by *N. J. S. A.* 30:4–66, the pertinent part of which is as follows:

"Every patient supported in a State charitable institution shall be personally liable for his maintenance and for all necessary expenses incurred by the institution in his behalf and the husband, father and grandfather, mother and grandmother, and the children and grandchildren severally and respectively, * * *"

In the first place, there is no contention in the present case that the child in question is a patient supported in a State charitable institution. Aside from that, however, here again we are confronted with the definition of the word "grandfather" and we are controlled by the same principles and decisions as hereinabove quoted with respect to the interpretation of *R. S.* 44:1–140.

Any statute on the subject under discussion, purporting to change the common-law rule of non-liability would be in derogation of the common law and would have to be strictly construed. *Albanese v. Richter,* 67 *Fed. Supp.* 771 (*D. C. N. J.* 1946). However, even a liberal construction of the statutes relied upon by the State does not support the State's contention in that they do not disclose an intent to change the legal relationship between an illegitimate child and its ancestors; and the judicially accepted meaning of the word "grandfather" does not include one in defendant's position.

The order directing defendant to support the child will be set aside.